HUGHES *v.* SEBASTIAN COUNTY BANK.

Opinion delivered May 21, 1917.

1. HOMESTEAD—SALE OF—DEBT FOR PURCHASE MONEY.—A homestead is not exempt from sale for the satisfaction of a debt for the purchase money thereof.

2. HOMESTEAD—PURCHASE WITH BORROWED MONEY—RENEWAL OF LOAN—ADDITIONAL SECURITY.—The rule stated above is not changed although the form of the original indebtedness is changed or the obligation is renewed, and interest charged, or if additional security for the loan is given by the borrower.

3. HOMESTEAD—PURCHASE WITH BORROWED MONEY,—BANKRUPTCY OF BORROWER—JURISDICTION TO ADJUDICATE THE RIGHTS OF THE PARTIES.—Appellant borrowed money from the appellee and therewith purchased property which he claimed as a homestead. Appel-

lant thereafter became bankrupt, and claimed the homestead as exempt. *Held*, the bankruptcy court did not have jurisdiction to adjudicate the claim of the appellee against the homestead of the appellant, and appellee must prosecute that claim in the courts of the state which had jurisdiction of the subject matter.

4. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—A new trial on the grounds of newly discovered evidence is properly denied where such evidence is cumulative merely, or where it is not shown why it was not discovered before the trial.

Appeal from Sebastian Circuit Court, Greenwood District; *George W. Dodd*, Special Judge; affirmed.

*A. A. McDonald*, for appellant.

1. The court exceeded its authority—it could only quash the execution or order the property sold under it. Kirby's Dig., § 3226. The bank had no lien on the homestead. The relation of vendor and vendee never existed. 66 Ark. 442, does not apply. 62 Ark. 398; 72 *Id*. 433; 66 Ark. 442. 66 Ark. 442 is overruled by 114 Ark. 433. The purchase money for a homestead is a lien thereon. The homestead is liable for money loaned to purchase it, but such is not the case here. The bank held the stock until it became worthless and is estopped.

*Geo. W. Johnson*, for appellee.

1. The money was borrowed for the purchase of a homestead and was a lien thereon and the homestead was not exempt from sale under an execution. 66 Ark. 442; *Ib*. 367; 69 *Id*. 123; 62 *Id*. 398. The case in 66 Ark. 442 is decisive of this and has never been overruled.

2. There was no waiver of any rights against the homestead by taking security. 62 Ark. 398; 31 *Id*. 392; 104 *Id*. 226; 79 N. E. 514.

3. There is no estoppel. 95 Ark. 488.

STATEMENT BY THE COURT.

Thomas J. Hughes filed a petition under section 3224 of Kirby's Digest to quash an execution issued upon a judgment rendered in the circuit court against him in favor of the Sebastian County Bank for $2,301.83 on the 6th day of January, 1912. The facts are as follows:

On the 6th day of September, 1904, Thomas J. Hughes executed to the Sebastian County Bank his promissory note for $750 with interest from date at 10 per cent. per annum. According to the evidence adduced in favor of the bank, the $750 was loaned to him by the bank for the purpose of purchasing the real property in controversy in this suit for a homestead and it has since been occupied and claimed by Hughes as his homestead. R. O. Herbert, the cashier of the bank, was the father-in-law of Hughes and assisted him in obtaining money from the bank and also in purchasing the property. The vendor of the property executed a deed to Herbert, and Herbert at once executed a deed to it to Hughes. The purchase of the property and the loan of the money to pay for it were simultaneous transactions. According to the testimony of Hughes himself he bought the property from the vendor and also borrowed the money from the bank and the two transactions were separate and had no connection with each other. The $750 note was renewed from time to time at intervals of six months or more. Additional sums of money were borrowed by him and added to the note and the accumulated interest so that on April 21, 1906, he owed the bank $1,136.46. His note was renewed for that amount and he deposited with the bank eighty shares of stock of a coal corporation as collateral security. Thereafter the note was renewed from time to time, and the amount thereof increased by borrowing more money from the bank until finally the last renewal note was for the sum of $2,150. The stock of the coal company was continued as collateral to secure the payment of the note when it was renewed. When the stock of the coal company was first put up as collateral it was worth $2,000 and the proof shows that Hughes was offered $5,000 for said stock at one time while it was held as collateral by the bank but refused to sell it. The stock of the coal company afterwards became worthless. On the 6th day of January, 1912, the Sebastian County Bank recov-

ered a judgment against Hughes upon the note for $2,150 with interest. On the 22d day of July, 1912, an execution was issued on the judgment levied upon the property in controversy, and the property was advertised for sale thereunder. Before the day of sale Celia Hughes, a sister of Thos. J. Hughes, instituted an action in the chancery court against the bank and the sheriff to enjoin the sale of the property under said execution. She claimed to be the owner of the property by purchase from a brother and obtained a temporary restraining order. On the 17th day of February, 1914, the chancery court dissolved the injunction and entered a decree in favor of the bank. Celia Hughes appealed to the Supreme Court, and on the 12th day of April, 1915, the decree of the chancery court was affirmed. On the 13th day of May, 1915, Thos. J. Hughes filed his voluntary petition in bankruptcy and was duly adjudged a bankrupt. He claimed the property in controversy as his homestead and the bankruptcy court set it apart to him subject to the right of the Sebastian County Bank to assert its claim in the court having proper jurisdiction. He was also granted a discharge in bankruptcy except as to such debts as were by law excepted from the operation of a discharge in bankruptcy. After Hughes was discharged in bankruptcy, on March 31, 1916, an alias execution was issued in the circuit court against Hughes in favor of the bank and levied upon the property. Hughes then filed his petition to quash the execution as stated above.

The circuit court found that the $750 originally loaned Hughes by the bank was for money advanced to him and used by him for the purpose of purchasing the property in controversy which afterwards became his homestead and that this sum together with the accrued interest amounted to $1,361.34. The court held that the said sum of $1,361.34 constituted the purchase money of the property in controversy and that it was not exempt from sale under execution under article 9, section 3, of our Constitution.

From the judgment rendered Hughes has duly prosecuted an appeal to this court.

HART, J., (after stating the facts). (1) In *Acruman* v. *Barnes*, 66 Ark. 442, the court held that money borrowed of a third person with which to purchase a homestead, when it is understood between the lender and the borrower that it is to be used for that purpose, and it is so used, is purchase money and the homestead is liable therefor.

The circuit court found that the evidence in the present case brought it within that rule. It is true there was a direct conflict in the evidence on this point, but that conflict was settled in favor of the bank by the finding of the circuit court and under the settled rules of this court its finding of fact will not be disturbed on appeal.

It is also contended by counsel for Hughes that the case just cited is overruled by the case of *Hardin* v. *Hooks*, 72 Ark. 433, where the court held that the mere lending of money to pay for land does not create a lien on the land. In *Phillips* v. *Colvin*, 114 Ark. 14, the court distinguished these two classes of cases and held that money loaned to retire purchase money notes of a homestead was not within the operation of the constitutional provision exempting purchase money from the homestead exemption. In that case Phillips was not a party to the original transaction and the money was loaned by him to Colvin to pay a pre-existing debt created for the purpose of purchasing a homestead and was therefore a general loan. In this case the court found upon substantial evidence that the land was purchased with the money of the bank and that the money was borrowed from the bank for the express purpose of purchasing the homestead and that it was used therefor pursuant to a specific agreement.

It is next insisted that the character of the purchase money debt and of the vendor's right of payment out of the homestead was waived because the bank renewed the

original note from time to time, loaned Hughes additional amounts of money and added them to the purchase money debt and took a new note for the whole amount and because it took the stock of the coal company from Hughes as collateral security for the whole loan. Article 9, section 3, of the Constitution of 1874, provides that the homestead of any resident of this State who is married or the head of a family shall not be subject to the lien of any judgment, or decree of any court, or to sale under execution or other process thereon, except such as may be rendered for the purchase money or in certain other enumerated cases. Under this provision of our Constitution as we have already seen we have held that the homestead is not exempt from sale for the satisfaction of a debt for the purchase money. It may be sold under execution issued on a judgment recovered on such debt or otherwise subjected to it by legal process.

(2)    In the case of *Bentley* v. *Jordan,* 3 Lea (Tenn.) 353, Mr. Justice Cooper, speaking for the court in the discussion of a statute of that State similar to our provision of the Constitution, said: "The creditor proceeds, not by virtue of the vendor's lien, which is only enforceable in equity, and may be lost by waiver, but by virtue of the general right of a creditor to subject his debtor's property by 'legal process,' the homestead exemption not applying to such a debt. Unless, therefore, the facts of this case take the 'debt or liability' out of the provision of the statute, the right to subject the property covered by the homestead claim to its satisfaction, would seem clear." In that case the court held that under the homestead law of that State, the homestead may be subjected to the satisfaction of a debt contracted for the purchase of the land in which the homestead right has been acquired, although the debt may have been changed in form by a new note with personal security, and at a higher though legal rate of interest, and although all the residue of the land has been taken by a creditor against whom the homestead exemption was effective. The court

said that the purchase money represented by the note in controversy in that case had not been paid and that it was this fact which prevented the operation of the homestead exemption. To the same effect see *Bradley* v. *Curtis,* 79 Ky. 327; *Chase* v. *Abbot,* 20 Ia. 154; *Hannah Burns* v. *Bezer Thayer,* 101 Mass. 426; *Wood* v. *Lord,* 51 N. H. 448; *David J. Pratt et al.* v. *The Topeka Bank,* 12 Kan. 570; *Weavers Estate,* 25 Pa. St. 434. All these authorities agree that the homestead continues liable as long as any part of the purchase money remains unpaid and they announce the rule to be that a change in the form of the original evidence of debt, by a new and even higher security, or by additional security, either personal or real, will not alter the character of the debt, nor affect the vendor's right to satisfaction out of the land sold. It is also said that the interest allowed by law is a mere incident to the extension of the time of payment.

(3) Hughes became a voluntary bankrupt and received his discharge in bankruptcy. The bankruptcy court held that the title to the property, which is in a homestead and exempt under the laws of the State as such, remains in the bankrupt and does not pass, except for the purpose of ascertaining the homestead right therein, and the bankruptcy court is without power to order its sale, because a particular creditor may have the right under the State law, to subject it to payment for his debt. It was held that the bankruptcy court did not have jurisdiction to adjudicate the claim of the bank against the homestead of Hughes but that it must prosecute that claim in the courts of the State which had jurisdiction of the subject matter. The decree of the bankrupt court was correct and such was the holding of the Supreme Court of the United States in *Lockwood* v. *Exchange Bank,* 190 U. S. 294; *Chicago, Burlington & Quincy R. R. Co.* v. *Hall,* 229 U. S. 511, and of this court in *Morris* v. *Covey,* 104 Ark. 226.

Judgment was rendered in favor of the bank against Hughes for the amount due it on January 6, 1912. At

the time the coal stock was put up as collateral security, in February, 1907, it was worth $2,000. It was shown that at one time Hughes was offered by a relative $5,000 for this stock and that by the time the judgment was rendered the stock had become worthless. If Hughes wished this stock to be sold and the proceeds applied to the payment of his debt to the bank he should have so notified the bank and not have asked it to renew his note every six months. Besides whatever loss he may have suffered, by reason of the misconduct of the bank with respect to the handling of his collateral might have been interposed as a defense by way of set-off or counterclaim when he was sued on the note. The court only held that the homestead was not exempt from so much of the judgment as was for the purchase money of the homestead together with the accrued interest, and this holding of the court we think was in accord with the principles of law above announced.

(4) Counsel for Hughes also insists that the court should have granted him a new trial on the ground of newly discovered evidence. In support of this ground of his motion for a new trial, Hughes made an affidavit that Henry Howard would testify that in the year 1905 he had loaned Thos. J. Hughes $750 and took his note therefor, with James Derby as his surety, that Hughes told Howard that he was borrowing it for the purpose of paying a note to the Sebastian County Bank from which he had previously borrowed the money to pay for his homestead; that James Derby would testify that he was present at the bank and saw Hughes pay off this note and at the same time give to the bank as collateral security some shares of stock in a coal mine for other moneys borrowed from the bank. Hughes further stated in his affidavit that he had forgotten this transaction at the time of the trial because he had so many transactions with the bank and for that reason had not testified to it himself and had not summoned the witness named above to testify to that effect.

A new trial on the grounds of newly discovered evidence is properly denied where such evidence is cumulative merely, or where it is not shown why it was not discovered before the trial. The rule that newly discovered evidence which is only cumulative or contradictory is insufficient grounds for a new trial is so well established in this State that a citation of authorities in support of it is unnecessary. It is also apparent that due diligence was not used by Hughes in producing the evidence referred to at the trial. It was no excuse that he forgot it. The evidence on this point was the only disputed issue of fact in the case and the court did not abuse its discretion in refusing him a new trial on this account.

It follows that the judgment must be affirmed.