248 S.W.2d 43 (1952)
JENNINGS
v.
INDUSTRIAL PAPER STOCK CO.
No. 21688.
Kansas City Court of Appeals. Missouri.
April 7, 1952.
T. James Conway, Kansas City, for appellant.
Richard H. Beeson, David P. Dabbs, Dean F. Arnold, all of Kansas City, for respondent.
SPERRY, Commissioner.
Plaintiff, a resident central public health inspector of Kansas City, sued for damages growing out of personal injuries sustained when he fell into an unguarded stoker pit in the unlighted furnace room of defendant. He had a verdict but the court sustained defendant's motion for judgment. Plaintiff appeals.
*44 There was in force, in Kansas City, an ordinance which required that property owners make their buildings "rat proof." Pursuant to that ordinance defendant employed a company to stop holes in its building, to prevent ingress and egress of rats. Defendant notified the city health department that this work had been completed and it sent plaintiff, one of its inspectors, to inspect the building and report on defendant's compliance. Defendant knew that the city would have one of its inspectors visit the building and report whether or not the work had been properly done, but did not know when the inspector would come.
Plaintiff's testimony was to the following effect: He arrived at the building via the dock and railroad tracks, told an employee the object of his mission, and inquired about the location of the furnace room. He was shown into the basement, and the furnace room door was pointed out to him. A wooden ramp, some 32 inches wide and sloping upward to a height of 20 inches, led from the floor of the basement to the door, which was closed and weighted, as required by fire ordinances. He climbed the ramp, pushed the door open about 6 inches, and informed the workman that it was dark in the room. The workman said: "Wait. I will turn on the light." The workman then walked up the ramp and plaintiff, not wishing to step down from the ramp and there not being room, as he thought, for safe passage of himself and defendant's employee, pushed the door open, and stepped inside, continuing to hold the door. As the workman came through the door to get at the light, plaintiff stepped "a little bit to one side," to make room for the workman. When he stepped aside he stepped into the furnace pit which, he stated, was some 10 inches from the edge of the door and the wall.
Plaintiff stated that the basement was artifically lighted, and that the furnace room was dimly lighted from the partially open door-way and from dirty windows; that the floor was black with coal dust and appeared to be smooth in the dim light. He stated that, from his work, he knew that furnace rooms frequently contained stoker pits. He had a flashlight in his pocket, carried for the purpose of making inspections in dark places, but he did not use it in this instance.
There was also evidence to the effect that defendant had carried on its business in this building for a great many years; that its business was that of sorting waste paper and rags, picked up from offices and industries, and baling same; that the floor of the building had holes, chutes, trap doors, etc, suitable for facilitating its business; that such obstructions posed a danger to any one walking through the plant if he were not familiar with their nature and location; that the policy of defendant was to permit visitors to go through the building only in company with a guide; that such a guide would have been furnished to plaintiff had he notified the manager that he was coming at that time, or if he had presented himself at the office; that rats chew on rags and waste paper but do very little actual damage; that after the material is baled, it is moved out promptly.
There was no evidence tending to prove that defendant had ever made any effort to eradicate rats on the premises except that required and performed under the ordinance.
The court sustained defendant's motion on the grounds that the evidence was insufficient to support a verdict and judgment for plaintiff, and that plaintiff's evidence established that he was guilty of contributory negligence as a matter of law.
Professor McCleary states, 1 Mo.Law Review, 45, that the legal status of a modern land owner is quite different from that of the feudal owner; that his present liability is the result of gradual encroachment on his traditional position of a near sovereign; that it has been a slow and difficult task to apply the modern law of negligence, to the relations obtaining between the possessor and persons coming on his land; that, gradually, the law pertaining to those relations is developing rights and duties founded in the modern principles of tort law, which principles are habitually applied in determining the rights and liabilities of owners of all other classes of property.
*45 A landowner, strictly speaking, owes some duty to anyone coming on his property. The precise duty that he owes depends on the relationship that exists between the parties at the time an injury is suffered. In this case, defendant may not recover unless he occupied a position such as has been defined as that of an invitee. Glaser v. Rothchilds (Banc) 221 Mo. 180, 184, 185, 186, 80 S.W. 332; Sup., 120 S. W. 1, 22 L.R.A.,N.S., 1045. If plaintiff was an invitee, within the legal meaning of that term, and was in the exercise of ordinary care for his own safety, then defendant owed him the duty to make the premises reasonably safe, or to warn him of such dangers as might exist, of which defendant knew or should have known, and of which plaintiff had no knowledge and could not reasonably discover for himself. Brody v. Cudahy Packing Co., 233 Mo.App. 973, 127 S.W.2d 7, 10, 11; Stoll v. First National Bank of Independence, 234 Mo. 364, 132 S. W.2d 676, 679. Whether or not plaintiff was an invitee depends in this case, as in every similar case, on the particular facts. Here, the essential facts are undisputed and appear in the testimony of plaintiff.
He was a legally authorized inspector for the public health department of Kansas City, and was lawfully at the place where he was injured.
The Supreme Court, in Stevenson v. Kansas City Southern Ry. Co., 348 Mo. 1216, 159 S.W.2d 260, 263, has declared "* * * the real test of the status of invitee * * * is the purpose of his visit. * * * One cannot be declared the invitee of the person sought to be held liable, * * * unless he was there for some purpose of real benefit or interest to such person." We followed that rule in Twine v. Norris Grain Co., Mo.App., 226 S.W.2d 415, 421. "It is generally held that one who is on the premises in performance of his duty occupies the status of an invitee with respect to the duty owed him by the owner or person in charge. This rule has been applied to employees of the government, the state, or a municipality." 45 C. J. 816, 817, 818. In 38 Am.Jur. 786, 787, it is said that an inspector who enters premises in the performance of his duty as a public officer is to be treated as an invitee, and adds: "* * * at least where the owner or occupant has an interest in the subject of the inspection." In 65 C.J.S., Negligence, § 43, pp. 514, 515, the rule is defined about as stated above, but it is pointed out that, in some cases, it is held that it is not necessary to resort to the fiction of an implied invitation. Such a case is that of Meiers v. Fred Koch Brewery, 229 N.Y. 10, 127 N.E. 491, 13 A.L. R. 633. We note, however, that in such cases, liability is generally placed on the theory that there was an implied invitation and that the property owner received a benefit from the service being performed when the injury was received.
In the majority of jurisdictions the rule is that, in the absence of a statute fixing liability, a fireman is not an invitee but is a mere licensee, to whom a landowner owes no duty to make the premises safe for him. 13 A.L.R. 638. The rule as to policemen is similar, 13 A.L.R. 646; but circumstances may take such a case out of the general rule. 65 C.J.S., Negligence, § 43, p. 515; 13 A.L.R. 651.
In an early and leading case, Anderson & Nelson Dist. C. v. Hair, 1898, 19 Ky.Law Rep. 1822, 44 S.W. 658, a government whiskey inspector, whose duties required him to make daily inspection of distillery apparatus, sued for injuries sustained while performing his duties on the premises. The court said that, while plaintiff was there to enforce government regulations, he was also there at the instance and for the benefit of defendant because, without his presence, the distillery could not be operated.
The St. Louis Court of Appeals, in the course of its opinion in Boneau v. Swift & Co., Mo.App., 66 S.W.2d 172, loc. cit. 175, stated that a meat inspector would be entitled to recover for injuries received on the premises of a packing plant while in the performance of his duties on the theory that, without inspection, live animals could not be slaughtered and that, with inspection, meat products would be more desirable to the public. The court distinguished the case from one involving a fireman or policeman on the grounds that a property owner has no reason to anticipate the presence *46 of either of the latter governmental employees at any particular time or place.
The above holding is cited with approval in Howland, Inc., v. Morris, 143 Fla. 189, 196 So. 472, 476, 128 A.L.R. 1013, where it was held that a building inspector occupies the status of an invitee; that there is a mutuality of interest in the subject of the inspection, between the inspector and the owner; that the municipality issues a building permit with the implied agreement that its agents be permitted to make detailed inspection of the component parts of the structure as it is assembled.
In 128 A.L.R. 1021, the above case is annotated and, at page 1022, the case of Fry v. Brubecker, 29 Pa.Dist.R. 893, is mentioned and discussed. There it was held that a tenement house inspector was an invitee while in the performance of his duties because defendant owned and leased her property subject to statutes requiring inspection by a public officer.
We held, in Brody v. Cudahy Packing Co., 233 Mo.App. 973, 127 S.W.2d 7, that plaintiff, a Kosher butcher inspector, employed and paid by a Kosher butcher's association, was an invitee because defendant could not sell to the Kosher market unless its products were so inspected and approved.
In Paubel v. Hitz, 339 Mo. 274, 96 S.W.2d 369, loc. cit. 370, 371, 372, it was held that a U. S. postman was an invitee when injured while on property in the discharge of his duties.
In Small v. Ralston-Purina Co., Mo.App., 202 S.W.2d 533, 536, 537, it was held that plaintiff's car inspector in the employ of a railroad company which furnished cars for loading by Ralston was, as to Ralston, an invitee while performing his duties on the latter's property. The decision is in harmony with the general rule of liability in such cases; but we are here considering the status of a municipal health department inspector injured while performing his duties on the premises, not that of an employee of a private business invitee.
As earlier stated, generally governmental inspectors are held to occupy the status of invitees. The basis for the holding, as stated in almost all of the cases, is that the services rendered are beneficial to defendant as well as to the public; that there is a mutuality of interest; but those cases involve situations where the service being rendered was directly connected with the activity being carried on by the landowner, such as the construction of a building, or the production of meat. In the case at bar it was not shown, by anything more than a scintilla of evidence, that the elimination of rats was of substantial benefit to defendant. However, it might be said that defendant was engaged in that activity at the time the inspection was made.
Defendant was operating a business in Kansas City, in a building that was subject to all of the laws of Missouri and of Kansas City. It was required by law to do certain work on its building, in a specified manner, in the interest of the public health and welfare of the community in which its building was located. It knew what was required to be done in order to comply with the rat control ordinance. It contracted with a company, which performed the work, and agreed to pay the contract price therefor only upon condition that the work done should be approved by the city health department after being inspected by its agents. By its own contract and agreement defendant put itself in a position where it became its contractual duty and obligation to pay for services, but only upon approval of the work by an inspector of the health department. The health department received notice of the completion of the work. Defendant knew that an inspection would follow and had voluntarily obligated itself to a third party, by contract, to submit to said inspection. An implied invitation is indicated, and we hold that plaintiff occupied the status of an invitee.
Before passing to the final phase of the case, the student's attention is invited to the theory of liability, in this kind of case, propounded in Fry v. Brubecker, supra. That theory seems to be well grounded.
It is next contended that plaintiff's own evidence establishes that he was guilty of contributory negligence as a matter of law. We are constrained to so hold.
*47 Plaintiff stated that he had been a health inspector for a period of 6 years; that he was familiar with furnace rooms and knew that it was not uncommon for them to have stoker pits in them. He testified to the effect that, after he reached the furnace room door and pushed it partially open, he said to defendant's employee, "It is dark in there. Where is the light?" The stoker pit was not dangerous except it could not be seen in the dark. The cause of action pleaded is bottomed on the fact that the furnace room was unlighted. Plaintiff's testimony indicates that he knew that it was dangerous to go into the furnace room because it was dark. While not specifically told by defendant or by its agent that there were dangers concealed by the darkness, he had such knowledge, acquired by his years of experience. His testimony, coupled with his remark to Humphrey, is substantial evidence of his knowledge.
However, if he did not know of the danger of entering an unlighted furnace room, he was, in effect, warned by Humphrey, who offered to remedy the situation. Humphrey said: "Wait. I will turn on the light." Plaintiff was a mature man, experienced in his occupation, and aware that furnace rooms contained such hazards as that which caused his injuries. Humphrey did not say: "Yes, it is dark and it is dangerous. Do not go in," which would certainly have constituted a warning such as would have fully discharged defendant's obligation to plaintiff. But Humphrey, in effect, told him not to enter until the light was turned on. Had he waited until the light was on plaintiff would probably not have fallen into the pit, which he could have seen; but, if he had fallen into it, it is not likely that plaintiff would have brought this suit.
Defendant was not an insurer. He owed a duty to make the premises reasonably safe, or to warn plaintiff of concealed defects or dangers. The place would have been reasonably safe if the light had been burning. Plaintiff failed to avail himself of his own knowledge of such places, failed to heed the warning given by defendant's servant, and failed to permit defendant to make the premises reasonably safe although defendant's employee was even then moving to do so.
Plaintiff failed to make a case because he failed to exercise ordinary care for his own safety by entering a place which he knew to be dangerous in its unlighted condition, and because he refused to heed defendant's positive warning, coupled with an offer to remedy the defect. His own testimony convicts him of contributory negligence.
The judgment should be affirmed.
BOUR, C., concurs.
PER CURIAM.
The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.
All concur.