ROBERT E. ANDERSON, Appellant, v. MR. and MRS. BARNEY CINNAMON, MR. and MRS. PHILLIP CINNAMON, and MR. and MRS. DAVE GAST-MAN, Respondents, No. 44187—282 S. W. (2d) 445.

Court en Banc, September 12, 1955.
Rehearing Denied, October 10, 1955.

*John J. Cosgrove, Henry Arthur* and *Campbell, Arthur & Clark* for appellant.

*David R. Hardy, Lane D. Bauer, Sebree, Shook, Hardy & Ottman, A. J. Granoff* and *George V. Aylward* for respondents.

[446] HYDE, J.—Action for $15,000.00 damages for personal injuries. The court dismissed plaintiff's petition, on defendants' motion, on the ground of failure to state a claim upon which relief can be granted. This case requires determination of the duty owed by owners of a building to firemen on the premises for the purpose of fighting a fire.

The petition alleged that defendants owned an apartment building with a three story porch, "running from the west wing to the east wing"; that the porch was in a dangerous and unsafe condition, insecurely fastened to the building and insecurely supported; and that defendants knew of such condition but "carelessly and negligently failed to put said porch in a reasonably safe condition."

Paragraphs 3, 4 and 5 of the petition further state: "3. Plaintiff states that on April 1, 1953, while in the discharge of his duty as a member of the Kansas City Fire Department, he was engaged with others of said fire department in fighting a fire in said building, and that to extinguish said fire, plaintiff and other firemen went on said porch with fire hose and other fire fighting equipment, and that ladders were placed against said porch.

"4. Plaintiff further alleges that while he and the other firemen were fighting the fire as above described and attempting to extinguish the same, the defendant Barney Cinnamon was on the premises and had full knowledge of the presence of plaintiff and the other firemen on said porch, together with the fire fighting equipment above described; that notwithstanding his actual knowledge of their presence upon said porch and his knowledge that said porch was dangerous and unsafe for ordinary usage, he carelessly and negligently failed to warn plaintiff that said porch was dangerous and unsafe and insecurely attached and supported, and thereby permitted plaintiff and the other firemen to enter into a situation which was a dangerous trap.

"5. That as a direct result of defendants' negligence in failing to repair said porch and put the same in a reasonably safe condition, said porch collapsed when plaintiff and the other firemen went thereon in order to fight said fire, and that as a direct result of the defendants' negligence in failing to warn plaintiff of said condition and in per-

mitting him to go into said dangerous trap, plaintiff fell when said porch collapsed.''

The status of a fireman is generally held to be the same as that of a licensee. (Prosser on Torts, 628; 38 Am. Jur. 785, Sec. 125; 65 C.J.S. 494, Sec. 35; Restatement of Torts, Sec's. 342 and 345 and Missouri Annotations; 13 A.L.R. 637, 61 A.L.R. 1028, 141 A.L.R. 584 annotations.) Firemen are in a different class [447] from licensees because their right to enter is independent of any permission of the possessor of the property, who has no right to exclude them, and some cases say they have a status sui generis. (Skypulski v. Waldorf Paper Co., (Minn.), 45 N. W. (2d) 549; Ryan v. Chicago & N. W. Ry. Co., (Ill.), 42 N. E. (2d) 128.) Nevertheless, the duty of a possessor of land to fireman is the same as to licensees, who enter with his permission, as the authorities hereinabove cited show. Firemen enter under a license given by law, primarily for the benefit of the public generally, although the possessor may also be benefited by their work. Firemen have police powers at fires. (Kansas City Charter 1946, Art. 3, Sec. 31.) We, therefore, must determine this case on the basis of a possessor's duty to a licensee.

It is the well settled law in this state that a possessor owes no duty to licensees as to maintenance but that the licensee takes the premises as he finds them, except for wantonness or some form of intentional wrong or active negligence of the possessor. (Stevenson v. Kansas City Southern Ry. Co., 348 Mo. 1216, 159 S. W. (2d) 260; Porchey v. Kelling, 353 Mo. 1034, 185 S. W. (2d) 820; Walters v. Markwardt, 361 Mo. 936, 237 S. W. (2d) 177; Twine v. Norris Grain Co., (Mo. App.), 226 S. W. (2d) 415.) ''It would be an obviously unreasonable burden to impose on landowners to require them to keep the whole of their premises in such condition as to make every part of it safe for those whose unusual and exceptional right of entry may never accrue. The broad range of such a duty, the impossibility of forecasting the precise point to which the officer's duties may call him, the infrequency of his probable visits, all clearly preclude the idea that the balance of social benefit can require such a serious restriction on the owner's use of his land, or justify the imposition of such a burden on his exchequer to prevent so vague a risk of so improbable an injury.'' (The Liability of a Possessor of Land in Missouri to Persons Injured While on the Land—McCleary, 1 Mo. Law Rev. 45, 57, quoting from Bohlen, Studies in the Law of Torts.) Therefore, the claim ''of defendants' negligence in failing to repair said porch and put the same in a reasonably safe condition'' cannot be a basis of liability to plaintiff.

As to the duty to warn, claimed by plaintiff, there seems to be some conflict of authority throughout the country. However, most of the cases cited by plaintiff can be distinguished as involving unusual hazard from highly dangerous substances kept on the premises

such as gasoline or explosive material. (See Campbell v. Pure Oil Co., (N.J.), 194 Atl. 873; Jenkins v. 313-321 W. 37th Street Corp., (N.Y.), 31 N. E. (2d) 503; Mason Tire & Rubber Co. v. Lansinger, (Ohio), 140 N. E. 770; Clinkscales v. Mundkoski, (Okla.), 79 Pac. (2d) 562; see also Lamb v. Sebach, (Ohio), 3 N. E. (2d) 686.) The cases of Smith v. Twin State Gas & Elec. Co., (N.H.), 144 Atl. 57 and Texas Cities Gas Co. v. Dickens, (Tex.), 156 S. W. (2d) 1010, involved negligence of a public utility company in handling gas (failing to find a leak in one and failing to shut off the line to a burning building in the other) rather than the duty of a possessor of land. As we pointed out in the Stevenson case (159 S. W. (2d), l.c. 263), and as also stated in the Missouri annotations to Sec.'s. 342 and 345, Restatement of Torts, we have never established the broad rule of liability to licensees stated in those sections to the extent of a duty to warn licensees of every known condition that might involve an unreasonable risk to them. While we agree with the cases requiring warning of the presence of inherently dangerous substances involving unusual hazard, especially when there is a fire on the premises which is likely to explode them, nevertheless to establish such a duty as to all known conditions that could involve some danger would require additional duties of possessors of land in a great many situations in which it has been held no duties exist under previous decisions of this state. We do not think we should change the law of this state to that extent.

A leading case on the duty of a possessor of land is Glaser v. Rothschild, [448] 221 Mo. 180, 120 S. W. 1, holding that leave and license "bestows no right to care." In following this case, in Gilliland v. Bondurant, 332 Mo. 881, 59 S. W. (2d) 679, as to a possessor's duty to a licensee, we said: "the only duty of the owner is that he must not willfully or wantonly injure him, or knowingly let him go into a hidden peril, or otherwise, by an affirmative negligent act, injure him after his presence is or should be discovered in a position of danger. He owes him no affirmative duty of care to protect him." We think the explosive material cases are a good example of what is meant by letting one go into hidden peril and some of them are set out in the footnotes to 45 C.J. 796 which we cited in connection with that statement. (See also 65 C.J.S. 504, Sec. 38; Boyer v. Guidicy Marble, Terrazzo & Tile Co., (Mo. Sup.), 246 S. W. (2d) 742 and cases cited concerning duty as to explosives.) Thus it is unusual hazard that requires warning to licensees. Harmful chemicals, explosives and other inherently dangerous materials developed by modern science and industry, no doubt, would be within this rule at least under circumstances where licensees could not be expected to know of their presence or effect. However, in Gannon v. Royal Properties, 136 N.Y.S. (2d) 129, it was held failure to warn of presence of gasoline was not negligence when the fire was in a garage, the court say-

ing: "Gasoline is known by everybody to be stored about a garage." The court further stated: "While the testimony in behalf of plaintiffs was that only about ten percent of garage fires involved burning gasoline, still such a condition could not come as a surprise to firemen and we are unable to accept the proposition advanced by plaintiffs that it became the duty of defendant to warn the firemen of the nature of the fire because such a fire called for a special type of attack. This is a matter of professional experience and judgment which can hardly be expected to exist on the part of property owners and the responsibility therefor cannot properly be shifted to them." Thus the presence of gasoline in a place where it might reasonably be expected would not be a hidden peril.

We have never held there is a duty to warn licensees of structural conditions, due to age and natural deterioration or to improper construction, or to warn of conditions due to casual negligence of persons with respect to objects or materials not inherently dangerous even in attractive nuisance cases. (See Hull v. Gillioz, 344 Mo. 1227, 130 S. W. (2d) 623; Emery v. Thompson, 347 Mo. 494, 148 S. W. (2d) 479.) Such structural conditions are capable of being observed and ascertained. To require such a warning would place a very great burden on the possessor of land, especially as to firemen, because he would not know when they might come, what part of his premises they might use or how they would use them. It would also be likely to interfere with the operations of the firemen in fighting the fire for a possessor to undertake to tell them where to go and where not to go.

Meiers v. Fred Koch Brewery, 229 N. Y. 10, 127 N. E. 491, 13 A. L.R. 633, cited by plaintiff, was not a warning case but instead involved keeping safe the usual means of access to the premises. Plaintiff, a fireman, fell in a coal hole in an unlighted driveway while on his way to a building on the premises which was on fire. The court held that, as to the rightful use of this driveway, for the purpose intended by the owner, the fireman "was neither a trespasser or licensee"; and so found the duty to an invitee applicable. The court said its decision was limited "to the case of one not a licensee entering business property as of right over a way prepared as a means of access for those entitled to enter, who is injured by the negligence of the owner in failing to keep that way in a reasonably safe condition for those using it as it was intended to be used." Certainly it cannot be said that defendants' porch in this case was being used as it was intended to be used. In the Jenkins case, (31 N. E. (2d) 503) in New York, a warning was required in an unusual hazard case (gasoline); and Schwab v. Rubel Corp., 286 N. Y. 525, 37 [449] N. E. (2d) 234, on the authority of the Jenkins case, applied the unusual hazard rule to a hole in the floor, holding that it was a jury question whether the hole in the floor constituted an unusual hazard. This case in effect follows the rule of Sec. 345 of the Restatement of Torts

(which it cites) requiring a warning to licensees as to known dangers; and as we have noted, this is not the Missouri rule.

Another case on which plaintiff relies is Shypulski v. Waldorf Paper Products Co., 232 Minn. 394, 45 N. W. (2d) 549. In that case, defendant had built a wall of concrete blocks in its warehouse which was "dangerous to anyone entering the warehouse at a time when there was any lateral pressure against the wall." There was a fire in the warehouse which plaintiff and other firemen extinguished. Thereafter they entered the warehouse to make certain that the fire had been entirely extinguished and while there the wall of concrete blocks collapsed injuring plaintiff. The court held the owner owed the firemen no duty to keep the building in a reasonably safe condition and that no liability could be predicated upon the existence of any defect in the condition of the wall. However, the court held that defendant did have a duty to disclose such a hidden danger known to it, citing mainly the explosion cases, the New York cases hereinabove discussed, and Sec. 345, Restatement of Torts. We think there is a real difference between explosive material which is almost certain to explode when reached by fire and a defective structural condition, whether due to faulty construction or age and natural deterioration. There can be hardly any doubt about what will happen in the case of explosives, while the result of stresses and strains on structural conditions is more of a matter of opinion, and it is likewise one about which those with the professional experience and judgment of firemen are usually capable of having an informed opinion. This may be a matter of degree. However, concerning matters of degree, the United States Supreme Court once said: "Things do not have to be in broad contrast to have different practical and legal consequences. Actions take estimation from degrees, and of this life and law are replete with examples." Industrial Accident Commission v. Davis, 259 U. S. 182, 42 S. Ct. 489, 491, 66 L. Ed. 888. Certainly there are good reasons for the higher degree of care required as to explosives because the greater risks and dangers from them do constitute an unusual hazard. Therefore, we do not think the rule requiring warning in the case of unusual hazard from explosives should be applied to the same extent to structural conditions generally.

Another difference between the Shypulski case and this case is that there the firemen went into the building where the wall of concrete blocks was located after the fire had been extinguished and there was ample opportunity to warn them before they went near it. The fact that they were making an inspection under those conditions might justify the application of the rule as to inspectors. (38 Am. Jur. 786, Sec. 126; Jennings v. Industrial Paper Stock Co., (Mo. App.), 248 S. W. (2d) 43 and cases cited.) However, the petition in this case only alleges that one of the owners "was on the premises

and had full knowledge of the presence of plaintiff and other firemen on said porch together with their fire fighting equipment.'' It is not alleged that defendants or any of them knew that the firemen intended to get on the porch before they did so (and bring their fire fighting equipment there) but only states that one of defendants knew of their presence there. Certainly this does not show opportunity to warn beforehand as in the Shypulski case. The situation of fire going on and the firemen actively fighting it is very different from that of making an inspection after a fire has been extinguished.

Plaintiff further says that, under the pleaded facts, defendant Barney Cinnamon was guilty of active negligence, citing 65 C.J.S. 322, Sec. 1, (defining active negligence), also p. 502, Sec. 36 (discussing active negligence); Dickerson v. [450] Connecticut Co., (Conn.), 118 Atl. 518, 519; Texas Pacific Coal & Oil Co. v. Bridges, (Tex.), 110 S. W. (2d) 1248, 1251; Rasmussen v. Palmer, 134 Fed. (2d) 780, 782; Newman v. Fox West Coast Theatres, (Cal.), 194 Pac. (2d) 706; Burke v. John E. Marshall, Inc., (Cal.), 108 Pac. (2d) 738; Texas Cities Gas Co. v. Dickens, (Tex.), 156 S. W. (2d) 1010; Valdale Apartments v. Ercito Mazzella Const., Inc., 115 N.Y.S. (2d) 59. Plaintiff also refers to railroad cases of failure to warn of approaching cars or trains at places where licensees might reasonably be expected. In these cases, failure to warn is coupled with affirmative acts. An example is Ahnefeld v. Wabash R. R. Co., 212 Mo. 280, 111 S. W. 95. In that case, in addition to failure to warn, there was the active negligence of running a train into the plaintiff's decedent. Likewise, in Burke v. John Marshall, supra, plaintiff was struck by a lumber carrier operated on a dock by defendant; and also in Valdale Apartments v. Ercito Mazella Const., supra, the damages were due to the negligent operation of a bulldozer, where obviously, as the court said, actual operation of the bulldozer was affirmative action. Texas P. C. & O. Co. v. Bridges, supra, discusses active negligence and indicates that making a safe condition dangerous such as leaving open a pit which had been covered might be active negligence. Newman v. Fox West Coast Theatres, supra, presents a somewhat similar situation, where defendant allowed water to get on a washroom floor creating an unsafe condition after plaintiff was permitted to come on the premises, which the court said involved a greater risk of injury to the licensee. Texas Cities Gas Co. v. Dickens, supra, was a case of an explosion from escaping gas. The judgment was not against the possessor of the land but was instead against the Gas Company and plaintiff was not in the building, but was standing at the curb line. This case is not very persuasive authority because, without discussion of reasons, the court said that the Gas Company's failure to cut off the gas within a reasonable time after it learned of the fire was active negligence, citing only one case, Valee v. Joiner, (Tex.), 44 S. W. (2d) 983, holding there was active negligence in the operation of a

312

truck and a streetcar resulting in a collision, certainly a very different situation. In the Rasmussen case, a boy on a box car touched an electric wire. It was held no case was made against the railroad even under the law of New York which required an owner to take reasonable steps to protect a licensee from a concealed danger. The Dickerson case was an automobile guest case and, of course, the operation of the car required positive acts. None of these cases are authority for holding that the failure of defendant Barney Cinnamon to warn the firemen to leave the porch was active negligence.

"The failure to warn is negative rather than active in its nature." (Dunn v. Bomberger, 213 N. C. 172, 195 S. W. 364, 367.) That is certainly true of failure to warn alone and not in connection with any affirmative conduct. If Cinnamon had urged plaintiff and the other firemen to go on the porch we would have a different case and circumstances under which active negligence could be claimed. Clinkscales v. Mundkoski, supra, (79 Pac. (2d), l.c. 564) is such a case, also involving explosive substance. There the defendant, knowing that barrels near a burning barn contained gasoline, "expressly stated to the deceased that they were empty, in order to cause deceased to go nearer the barn where he could play the hose upon said burning barn." Since the effect of the allegations concerning Cinnamon was that, after plaintiff and the other firemen were on the porch with their fire fighting equipment, he did not warn them that the porch "was dangerous and unsafe and insecurely attached and supported", we hold that plaintiff's petition did not show a case of active negligence on his part. We limit our decision herein to holding, where it is not alleged that the possessor of land was informed that firemen intended to enter and use the porch of his building with their fire fighting equipment before they went on it, he cannot [451] be held liable for failure to warn them to leave it after he knew of their presence there. Our conclusion is that our law imposes no duty to warn under such circumstances.

The judgment is affirmed.

*Leedy, C. J., Dalton, Eager* and *Storckman, JJ.,* concur; *Hollingsworth, J.,* concurs in result; *Westhues, J.,* dissents in opinion filed.

◼ WESTHUES, J. (dissenting)—I cannot concur in the result reached in the opinion prepared by Judge Hyde in this case. In the conclusion, it is stated, "We limit our decision to holding, where it is not alleged that the possessor of land was informed that fireman intended to enter and use the porch of his building with their fire fighting equipment *before they went on it,* he cannot be held liable for failure to warn them to leave it after he knew of their presence there." (Emphasis supplied)

To say that a property owner would be liable if he failed to warn firemen if he had opportunity to do so before the firemen went onto a porch that he knew was likely to fall, and not be liable for failure to warn after the firemen had entered upon the porch, is to draw a distinction where no difference exists. In other words, the opinion of Judge Hyde holds that a property owner may stand idly by while firemen who are on a defective porch fall to their death or great injury and not be liable even though a warning would have saved the firemen; but, if the owner has notice of the firemen's preparing to go onto the defective porch and fails to warn, then he will be liable. In my humble opinion, the petition in this case states a cause of action. The question of fact, that is, whether Barney Cinnamon had knowledge of the weakness of the porch and whether after the firemen entered upon the porch, Cinnamon had time to warn, should be determined by a jury.

I respectfully dissent.