**L. W. ROGERS, Plaintiff in Error,**

**v.**

**CATO OIL & GREASE CO., a corporation,
Defendant in Error.**

No. 40254.

Supreme Court of Oklahoma.

June 30, 1964.

Rehearing Denied Nov. 17, 1964.

Don Manners and Andrew L. Hamilton, Oklahoma City, for plaintiff in error.

Rinehart, Morrison & Cook, Oklahoma City, for defendant in error.

BERRY, Justice.

This action was brought by L. W. Rogers, hereinafter referred to as plaintiff, against Cato Oil & Grease Company, herein called defendant, seeking to recover damages for personal injuries. The various acts of negligence and the injuries allegedly received as the result thereof occurred while plaintiff was acting in line of duty as a fireman assisting in extinguishing a fire upon defendant's premises.

The cause was tried upon plaintiff's fourth amended petition which, among nine allegations of negligence, charged defendant with negligence in violation of specified fire ordinances of the City of Oklahoma City. These violations of the ordinances were alleged to have been the proximate cause of plaintiff's injury.

The issues upon which the case was tried were raised by defendant's answer in form of a general denial, coupled with affirmative defenses of contributory negligence and assumption of risk, to which pleas plaintiff replied by general denial.

Defendant's demurrer to plaintiff's evidence was overruled. However, at the close of all the evidence the trial court sustained defendant's motion for directed verdict, entered judgment thereon and discharged the jury. Plaintiff has perfected this appeal from the order overruling plaintiff's motion for new trial.

This appeal is predicated upon the single assignment of error that the trial court erred in sustaining defendant's motion for directed verdict when there were questions of fact requiring determination by the jury. The contention under which the argument relied upon for reversal of the judgment is presented states:

"Was the negligent condition, that is the stacking of the cans, in violation of the City Ordinances, the proximate cause of the plaintiff's injuries or was his independent act and intervening agent which broke the chain of causation releasing the defendant from liability. The question of proximate cause has always been a question for the jury when there is any causal connection between the alleged negligent act and the injury."

It will be of assistance in this matter to review the evidence briefly as an aid in determining the correctness of the trial court's action. This is proper by reason of the rule governing a trial court's consideration of the evidence when passing upon a motion for directed verdict. Connelly v. Johnson, Okl., 385 P.2d 448. Viewed in a light most favorable to plaintiff, the evidence reflects substantially the matters hereafter recited.

Plaintiff, an officer in the Oklahoma City Fire Department, with twenty-two years training and experience, while acting in line of duty with others of the Department, was engaged in extinguishing a fire of

incendiary origin at defendant's plant. On the premises defendant was engaged in refining and producing petroleum products, and in the course of such operations had stacked a number of pails or drums on a concrete-floored warehouse dock adjacent to a storage tank containing crude oil. During the course of the fire the firemen had hooked up fire-fighting equipment known as a "monitor" in order to direct a large stream of water upon this storage tank in an effort to prevent an explosion. Some of the pails or containers upon the dock had started to burst from the heat. In order to move the stacked containers away from the tank plaintiff took a "fourteen foot pike pole" and attempted to move the drums. While so engaged plaintiff was injured when he pushed or pulled one of the drums and "was covered with oil * * * and fire started" on him. The effort to control and extinguish the fire required removal of the containers from against the crude oil tank which was in danger of exploding. Certain municipal ordinances, which will be treated more fully hereafter, were pleaded and made part of plaintiff's evidence.

Plaintiff's position on appeal is that stacking of the containers or drums on the dock was a direct violation of the city ordinances involved. Thus it is urged that if defendant had not stacked these containers adjacent to the oil tank in violation of the city ordinances, thereby necessitating removal in view of the danger involved, plaintiff's injury would not have occurred.

Of the municipal fire ordinances admitted into evidence, only those hereinafter referred to are of particular import. The particular ordinances involved are Title 4, Secs. 79, 85 and 118 which provide in part:

"ABOVE-GROUND TANKS: Outside the limits as given in Section 4–75, the capacity of each outside, above-ground storage tank used, designed or intended for Class 1 and Class 2 liquids shall be limited as given in column A of the table for Class 3 liquids in storage tank double that given in column A, table 1, will be permitted.

"Table 1.

"

| A. Capacity of outside aboveground storage tanks for Class 1 and Class 2 liquids | B. Minimum distance of tanks to lines adjoining property which may be built upon | C. to any other tank" |
|---|---|---|

"Tanks more than one foot above the ground must have foundation and supports of non-combustible materials, except wooden cushions no combustible material shall be permitted under or within ten feet of any above ground outside storage tank."

"BARRELS AND DRUMS: Inside the fire limits, barrels and drums containing class 1, 2 or 3 liquid stored outside any building must not be piled upon each other, nor stored in a passage-way or beneath any window and no open light shall be permitted in such storage yard."

———◆———

Ordinance 4–79, supra, as above quoted does not include the numerical tables setting out the tank capacities and the minimum distances involved therein. The record does not reflect evidence establishing whether the tank involved was within definition of above-ground storage tanks or whether the tanks violated capacity requirements enum-

erated in another ordinance. Neither is there evidence tending to establish that tank "A" was classified as an above-ground outside storage tank under 4–85, supra. While such ordinance may be open to criticism for vagueness and ambiguity there is no evidence to establish that tank "A" was classified as an above-ground outside storage tank under the language of the ordinance.

As concerns Ordinance 4–118, supra, there was no testimony elicited which established that the petroleum product in the stacked containers was classified as a liquid within the three classes mentioned in such ordinance. The evidence herein makes it necessary to speculate whether the substance was a liquid within the meaning and intent of the ordinance. But if considered a liquid, then in order to sustain plaintiff it must be inferred further that such substance was a liquid coming within one of the types or classes mentioned in the ordinance. The same need to speculate relative to applicability of certain other ordinances is observable.

█ An "inference" has been defined as a deduction which is permissible under the evidence. Stumpf v. Montgomery, 101 Okl. 257, 226 P. 65, 32 A.L.R. 1490. An inference may be based upon another inference only so far as the interests of justice require. But, an inference cannot be based upon another inference when the matter sought to be established could have been proved by direct evidence which was within the plaintiff's power to produce. Lowden et al v. Van Meter, 181 Okl. 210, 73 P.2d 424; Lawson v. Anderson & Kerr Drilling Co., 184 Okl. 107, 84 P.2d 1104. And, when the party bearing the burden of proof has the means of producing evidence of a more direct, explicit and satisfactory nature but fails to produce such evidence, a presumption arises that if more satisfactory evidence had been given it would have made apparent some deficiencies in the party's case. Wigmore On Evidence (2nd ed.), p. 585; and Jones On Evidence (5th ed.), Secs. 28 et seq.

We do not, however, pass upon the question whether the ordinances, the alleged violation of which provides the basis of the claim of negligence sought to be asserted, were enacted for the benefit of municipal firemen. This is for the reason the appeal properly is determinable upon other grounds.

This Court has not considered the question raised by this appeal, heretofore, although our decision in Clinkscales v. Mundkoski, 183 Okl. 12, 79 P.2d 562, dealt with a related question. Therein one serving as a fireman because pressed into service for the occasion died of injuries received in an explosion caused by the fire. Our holding in that case rests upon the classification of the fireman as an invitee under the peculiar circumstances of the case. Upon this basis we held the propertyowner owed a positive duty to warn such invitee of dangers known or to be anticipated by the owner. Factual dissimilarity nullifies the value of that decision as authority for our conclusion here.

█ The evidence in the present appeal established that plaintiff was a trained fireman of many years' experience and that he was fully aware of all existing conditions at the time of and surrounding the particular occurrence. Within our understanding of the case we believe it is necessary to arrive at the conclusion reached by determining what duty, if any, was owed to plaintiff under the circumstances disclosed by the evidence. As we are able to interpret the cases from other jurisdictions, the degree of duty or responsibility which a propertyowner owes to persons entering upon his premises varies. Such variance occurs not only insofar as it may be determined that they are invitees, licensees or trespassers, but also in that the degree of duty or responsibility tends to vary with each class. Further, to a recognizable degree, the variation attaches to subclasses within each class. See 65 C.J.S. Negligence § 32 et seq.

Plaintiff's argument is based upon a decision of the Illinois Supreme Court in Dini

**1004**

et al. v. Naiditch, 20 Ill.2d 406, 170 N.E.2d 881, 86 A.L.R.2d 1184. Although concededly the minority view, plaintiff urges the applicability of such holding as expressive of the modern trend toward avoiding a harsh rule of law which denominates a member of a fire department a "licensee", to whom the landowner owes no greater duty than to refrain from intentional injury. The facts in the Dini case, supra, were that the premises had been inspected prior to the fire and nine ordinance violations had been called to the propertyowner's attention, including the keeping of flammable substances on the premises near a wooden stairway and failure to have fire doors. The decision turned upon the issue of a propertyowner's liability to firemen for negligent maintenance of the premises. The long-standing rule in that State was that firemen were "licensees" to whom no duty was owed other than avoidance of willful injury. Liability was predicated upon violation of safety ordinances. The court reasoned that the ordinances were enacted for benefit of the firemen and the firemen had the right to assume such ordinances had been complied with when entering upon the premises. The court specifically found that the ordinances involved were intended to prevent fire and loss of life in case of fire, and held that an additional basis of defendant's liability arose from violation of the particular fire safety ordinances.

The Illinois Court specifically held that firemen in discharge of their duties were not to be classified as licensees, and in Syllabus 7 stated:

"The violation of a statute or ordinance designed for protection of human life or property is prima facie evidence of negligence, and the party injured thereby has a cause of action, provided he comes within the purview of the particular statute or ordinance and the injury has a direct and proximate connection with the violation."

Already having determined that the present appeal is not to be disposed of upon the negligence asserted in alleged violations of various city ordinances, we decline to accept the reasoning or the rule of the Dini case as persuasive. Therein the violations of fire ordinances were judicially declared to be the proximate cause of injury sustained because firemen were declared to come within the scope of protection intended to be afforded by such ordinances. The state of the record herein precludes application of the rule in Dini v. Naiditch, supra, inasmuch as there is absolutely no showing that firemen were within the scope of the protection thought to be afforded thereby. Neither positive evidence nor permissible inference permit the finding that the ordinances involved were enacted for the benefit of firemen generally or plaintiff individually.

Considering now the question as to the degree of duty owed plaintiff, if any, it may be observed that the majority of jurisdictions classify firemen who enter upon premises in the line of duty as licensees. 38 Am.Jur., Negligence, Sec. 125; 65 C.J.S. Negligence § 35b; and Anderson v. Cinnamon et al., 365 Mo. 304, 282 S.W.2d 445, 55 A.L.R.2d 516. The great diversity of reasoning as concerns the classification to be applied when considering the propertyowner's duty to firemen may be observed in the annotations in 13 A.L.R. 637; 61 A.L.R. 1028; 141 A.L.R. 580; 55 A.L.R.2d 516; and 86 A.L.R.2d 1184. In 65 C.J.S. Negligence § 45b the text states:

"The owner, occupant, or person in charge of premises owes to invitees or business visitors thereon the duty of exercising reasonable care to keep the premises in a reasonably safe and suitable condition, or of warning invitees or business visitors of hidden or concealed perils of which he knows or should know in the exercise of reasonable care."

The rule is expressed in 38 Am.Jur., Negligence, Sec. 91, in the following language:

"There is no absolute duty of giving warning of any particular peril, the necessity therefor depends upon the

age, intelligence, and information of those to whom the warning might be due, and the obligation disappears entirely where it is shown that the injured person did in fact fully appreciate the peril. So, in respect of such perils as may be said to be obvious to the injured person, there is no obligation to give any sort of warning. * * *"

█ The quoted rule has been recognized and applied consistently by this Court. See City of Tulsa v. Harman, 148 Okl. 117, 299 P.2d 462; S. L. & S. F. Ry. Co. v. Gilbert, 185 Okl. 591, 95 P.2d 123; City of Drumright v. Moore, 197 Okl. 306, 170 P. 2d 230; and Magnolia Pet. Co. v. Barnes, 198 Okl. 406, 179 P.2d 132. In City of Drumright, supra, we stated:

"In Long Construction Co. v. Fournier, 190 Okl. 361, 123 P.2d 689, we approved the rule of nonliability announced in Restatement of the Law of Torts, Vol. 2, sec. 343, and held that a possessor of real estate was liable to an invitee injured on the premises 'if but only if, he has no reason to believe that the person injured will discover the condition or realize the risk involved.' "

And, the syllabus announces the rule:

"The duty of an owner or occupant of premises to keep them safe for invitees extends only to defects or conditions which are in the nature of hidden dangers, such as are not known to the invitee, and would not be observed by him in the exercise of ordinary care."

█ The plaintiff's own evidence in this case established that he knew defendant produced petroleum products at this plant, and upon arrival observed the fire and heard explosions. In company with other firemen he went along a passageway to a station between the burning building and the crude oil tank. When in that area he was able to observe fire in the dock area which was loaded with containers of petroleum products, and when the lids "popped" from containers because of the heat, they would fall over and the contents would run down to the ground. The fire was making the containers explode, and when plaintiff started moving the burning containers they were stacked fifteen feet above his head.

Such direct evidence establishes that, even if the general surroundings of the area where plaintiff went be classified as inherently dangerous, it is equally clear that such conditions were open and obvious and observed by plaintiff. The plaintiff's presence at the time and manner disclosed by the evidence was occasioned by the requirements of his profession in the discharge of customary, anticipated duty. Under such circumstances the general rule that the propertyowner owes only the duty to keep the premises safe for invitees as respects defects or conditions in the nature of hidden dangers, and to avoid willful or wanton injury is inapplicable.

Consideration herein is limited entirely to the duty, if any, owed by a propertyowner to a fireman upon the premises in the line of duty. And, the conclusion reached does not depend upon classification of the injured party as an invitee or a licensee. We are of the opinion and hold that any duty owed plaintiff under the circumstances disclosed herein could not have exceeded the duty required toward an invitee, which simply required warning of hidden or concealed dangers. And, assessing the evidence herein in the light most favorable to plaintiff, it was apparent that plaintiff was in a position to, and did know and appreciate, the obvious peril involved.

█ Rules governing the weighing of plaintiff's evidence on demurrer also are applicable when considering a motion for directed verdict. The evidence most favorable to plaintiff must be taken as true, together with inferences to be drawn therefrom. Connelly v. Johnson, Okl., 385 P.2d 448. And where plaintiff fails to offer competent evidence and proof of elements necessary to support recovery, the defendant's motion for directed verdict properly is sustained. The trial court should sustain the motion for directed verdict when the evidence is not sufficient as a matter of

law to justify a verdict and judgment for plaintiff. Hume v. Standard Life and Accident Insurance Co., Okl., 365 P.2d 387.

Judgment affirmed.

DAVISON, WILLIAMS, JACKSON and IRWIN, JJ., concur.

BLACKBIRD, C. J., concurs in result.

HALLEY, V. C. J., and JOHNSON, J., dissent.

HALLEY, Vice Chief Justice (dissenting).

The majority opinion does not decide this case on the theory applied by the trial court, to-wit: that there was no proof that defendant's negligence was the proximate cause of the plaintiff's injuries. I believe the trial court erred in directing a verdict against plaintiff and I believe this Court errs in affirming the judgment, even if it does so upon the basis of another theory.

In my opinion it is not necessary to decide whether a fireman occupies the status of a licensee or an invitee when he enters private premises to fight a fire. In Oklahoma there is no distinction between the duty owed by a landowner to a licensee or an invitee. As to either one, the landowner owes the duty of exercising ordinary care to avoid injury to him. Good v. Whan, Okl., 335 P.2d 911; Julian v. Sinclair Oil & Gas Co., 168 Okl. 192, 32 P.2d 31.

Plaintiff alleged and offered proof of the violation of the following ordinance of Oklahoma City (Title 4, section 85):

"* * * no combustible material shall be permitted under or within ten feet of any above ground outside storage tank."

Plaintiff testified that an above ground outside storage tank containing 100,000 gallons of oil was so heated by nearby flames that the oil was boiling inside. He could tell this by feeling the tank, which he did. Next to this tank was the dock on which defendant had stacked the pails or drums which were burning and causing the danger to the large tank. These stacked pails were about a foot and a half from the large storage tank. Plaintiff's testimony continued as follows:

"Q. What did you do after you got back there, what happened?

"A. Well, I proceeded to start moving the burning stack of drums and stuff there.

"Q. How high were the drums stacked?

"A. About fifteen feet above my head with me on the ground.

"Q. How did you move them?

"A. Well, by pushing and pushing sideways like that (Indicating).

"Q. With the pike pole?

"A. Yes.

"Q. Now, in what manner did you do that, did you put it up against the drums and push them over?

"A. It has got hooks, you see the hook comes out like that (Indicating), and one back here comes like that (Indicating), anyway I would put that hook part in the side of that container if I couldn't push them over, well then, I would push and pull out, pull to the left, in other words to the west, this way (Indicating).

"Q. Well, was it necessary to remove those?

"A. Well, to get them away from this tank. In other words to eliminate the fuel that was burning there next to the tank.

"Q. Why was it necessary to move it away from this tank?

"A. Because of the possibility of that tank exploding if I had left that fire right up against it.

"Q. Now, how many stacks of drums were you able to move?

"A. You mean before I got burned?

"Q. Yes, sir.

"A. Well, I was on the last row.

"Q. You had removed several rows?

"A. I had removed them all except one real high, clear up to the top, and I had the other one down about half way.

"Q. What occurred when you got burned?

"A. Well, I pushed this one and when it went over it hit something back of it and it came back at me like that (Indicating) and I tried to turn.

"Q. What was it you got on you?

"A. Well, I was covered with oil like that and fire started on me."

On cross-examination plaintiff testified as follows:

"Q. And you were pushing them which direction?

"A. Well, at the time I got burned I was pushing away, they were stacked that way (Indicating) into the dock and building area.

* * * * * *

"Q. I will ask you if it isn't true on one or more occasions before you were burned that you would pull the can towards you and Phillips missed hitting it with the water and that the fire splashed over to you or almost on you?

"A. No, sir.

"Q. That did not happen?

"A. No, sir.

"Q. Well, I meant Purdue instead of Phillips.

"A. I knew what you meant."

The above testimony and the reasonable inferences therefrom reveal that plaintiff was attempting to remove a source of burning petroleum products (a combustible material) which had been stacked within less than ten feet from an above ground outside storage tank containing 100,000 gallons of oil. He was attempting to do the thing which the ordinance had required of defendant, that is, provide a safe space or distance between the drums of combustibles and the storage tank. The defendant violated the ordinance, and I believe it was for the jury to decide the issue of proximate cause. I find nothing in this testimony to cause all reasonable men to conclude that he pulled the stacked drum or pail over on himself, as the trial judge apparently concluded. An equally reasonable conclusion is that he was pushing one of the drums away from himself and it hit something, because of the way defendant had stacked it, causing it to rebound unexpectedly toward him. The majority opinion finds as a matter of law from the above quoted evidence that plaintiff "was fully aware of all existing conditions at the time of and surrounding the particular occurrence," and that the "conditions were open and obvious and observed by plaintiff." I disagree. I believe a reasonable inference, from his testimony that the drum "hit something back of it and it came back at me," is that all the conditions were not open and obvious, and he was not aware of all existing conditions as to the manner of stacking the drums and as to what was behind them. Therefore, I do not believe the rule of law which the majority of the Court relies on herein is applicable to the facts of this case. I believe that a jury question was raised by the evidence and the trial judge should have submitted it to the jury under proper instructions. We held in the second paragraph of the syllabus of Missouri-Kansas-Texas Railroad Company v. Jones, Okl., 354 P.2d 415:

"On defendant's general motion for a directed verdict in a tort action, the trial judge should consider only the evidence, and reasonable inferences therefrom, most favorable to plaintiff, and, unless, on the basis thereof, he can correctly say that all reasonable men would agree that defendant was not negligent, or that its negligence was not the proximate cause of plaintiff's injury, he should overrule the motion, and submit the cause to the jury."

I would reverse the case and remand it for a new trial.

I dissent.