Mildred L. ZIEGLER, Appellant,

v.

Edward F. ELMS and Marie E. Elms,
Respondents.

No. 50414.

Supreme Court of Missouri,
Division No. 2.

March 8, 1965.

Motion for Rehearing or for Transfer to
Court En Banc Denied April 12, 1965.

Stemmler & Stemmler, St. Louis, for
appellant.

Heege & Heege, Clayton, for respondents.

PRITCHARD, Commissioner.

The parties are in agreement that plaintiff, sister-in-law of defendants, was a social guest, and was a licensee, for whose injuries defendants, as owners and occupiers of their private residence, were liable only for "wantonness or some form of intentional wrong or active negligence." Wolfson v. Chelist, Mo., 284 S.W.2d 447, 448 [2-4].

Plaintiff was injured when she fell down a stairway leading from defendants' kitchen. The stairway led first to a landing

(which led through a doorway to a patio) thence to a basement rathskeller. There were three steps on the stairway, and plaintiff caught the heel of her shoe on a metal molding strip or "nose" which was attached to the second step from the top. She alleged as negligence (1) That defendants negligently installed and constructed the metal nosing in such manner that it would recurringly become loose and the edge thereby raised, thereby resulting in an unsafe and dangerous condition; (2) That defendants used a negligent method of tightening said strip on the occasions when it became loose; and (3) That defendants, although fully apprised of the constantly recurring unsafe and dangerous condition, failed to warn plaintiff thereof.

■ At the close of all the evidence the court directed a verdict against plaintiff and in favor of defendants on her $25,000 action for personal injuries and entered judgment against plaintiff thereon. The argument of plaintiff on this appeal is first that she made a submissible case upon the theory of defendants' *active negligence.* The evidence stated favorably to plaintiff is as follows:

Previous to about 1949, the tread on the stairway steps was wood. About that year, Mr. Elms personally installed tile on the horizontal surface of the step. He installed also an aluminum strip on the edge of the stair tread. This strip was "L" shaped, the shorter part, ¼ inch, resting horizontally on the top part of the linoleum or tile, and the longer part, ⅞ inch, extending downward at the edge of and for the thickness of the tread. The strip was fastened to the edge of the tread by nails or brads which were driven into the vertical position of the strip midway between the top and bottom thereof and at about 4 inch intervals. There were no nails driven in on the top of the strip, and no screws were used in connection with the installation. The aluminum strip ran the entire width of the stairway, which was 37 or 37½ inches between the walls.

The strip of metal had been on the stair tread from the time of installation, around 1949, until the day of the accident, October 5, 1958. Two or three times each year Mr. Elms would tap in the protruding nails (which were the same as originally installed) on the stair tread to keep the aluminum strip tight on the step. He would do this only if he saw any nails which were loose just when he looked at them as he went up and down the stairway. He testified that it would naturally follow if the nails were loose that the aluminum strip would protrude somewhat out from the tread or the tile. The nails would not come loose in any particular portion of the step and Mr. Elms would cover the entire area in tapping them back into place with the hammer.

On the date of her injury, plaintiff was upstairs in defendants' home. Mr. Elms and plaintiff's husband were also upstairs watching a baseball game. Mrs. Elms was in the basement doing laundry. Plaintiff started down the steps to the basement to see if she could help and to tell Mrs. Elms she was going to use the telephone. As she started down the stairs, walking in the center of the step, she looked down in a normal manner and did not notice anything unusual about the steps. On the second step her left heel got caught on the metal edge of the step, and she fell to the halfway landing thus receiving her injuries. After she fell she could see the step and the metal strip was loose (but not hanging) and the nails were extending out a little way. Mr. Elms also testified that the nails were protruding and the strip of aluminum was loosened after plaintiff's fall. After the accident Mr. Elms got his hammer and hammered the nails in on the step. Prior to the accident defendants mentioned nothing about the step to plaintiff. She was accustomed to using the steps in going to the rathskeller and to the patio and yard area, and she never did notice anything unusual about the steps.

Plaintiff's argument in support of her premise that she made a case of active neg-

ligence against defendants is that a prior faulty erection or construction coupled with a failure to warn *can* be a sufficient affirmative act of negligence. There is no evidence in this case that defendants initially installed the aluminum stair molding or nosing in a manner not amounting to due care, that the materials were in any way defective, or that the materials used were in any way unfit or unsuitable for the purposes for which they were used. Although Mr. Elms installed the strips himself, there was no evidence that he did so in an improper manner. Although when the strips were installed nails were used to secure the strip to the stair step, there was no evidence that they were not suitable, or that screws (which were not used) would have been any more suitable than nails for this purpose. It is mere surmise and speculation on the part of plaintiff in her brief (and would have been so on the part of the jury) that screws would have held the strip tighter to the step than the nails over the years when the steps were in constant use. There was no evidence that the strip would have come loose and the nails would have come out if they had been put in from the top of the tread. The only evidence on the use of the nails came from defendant, Mr. Elms, that the nails were furnished with the strip of aluminum (made for use on a stair tread) for installation. Plaintiff's first pleaded assignment of negligence in installing and constructing the metal nosing in such manner that it would recurringly become loose and the edge thereby raised is not supported by the evidence, and she therefore failed to make a case upon that ground.

▆▆ Even if it were so, however, that defendants did negligently install the stair tread strip, in the absence of an ultra-hazardous condition inherent therein, plaintiff could not recover. Being a social guest, she took the premises as she found them. Porchey v. Kelling, 353 Mo. 1034, 185 S.W.2d 820, 822 [2, 3], quoting Glaser v. Rothschild (Banc), 221 Mo. 180, 120 S.W. 1, 22 L.R.A.,N.S., 1045; Anderson v. Cinnamon (Banc), 365 Mo. 304, 282 S.W.2d 445, 447 [3, 4], 55 A.L.R.2d 516; Wolfson v. Chelist, supra (Mo.App., 278 S.W.2d 39, loc. cit. 44 [9, 10]). In this case no ultra-hazardous condition at the time of the initial construction is shown by the evidence. There is merely evidence that the nails along the strip of aluminum came loose two or three times a year which caused Mr. Elms to tap them back into place. This is no hidden pitfall or trap, nor is there a new creation of a hazard or danger on the staircase, which had been continuously used by plaintiff, which could render defendants liable to plaintiff under these cases cited and quoted (notably De Tarr v. Ferd. Heim Brewing Co., 62 Kan. 188, 61 P. 689) in Henry v. Disbrow Mining Co., 144 Mo.App. 350, 128 S.W. 841, 844.

▆▆ Inasmuch as there was no initial hidden peril, known to defendants but not to plaintiff, for which defendants would be liable, as we have held, there was no duty of defendants to warn plaintiff. In Anderson v. Cinnamon, supra, loc. cit. 282 S.W.2d 448 [7], this court said, "We have never held there is a duty to warn licensees of structural conditions, due to age and natural deterioration or to improper construction, or to warn of conditions due to casual negligence of persons with respect to objects or materials not inherently dangerous even in attractive nuisance cases. See Hull v. Gillioz, 344 Mo. 1227, 130 S.W.2d 623; Emery v. Thompson, 347 Mo. 494, 148 S.W.2d 479."

▆▆ The condition of the stair tread aluminum strip here is only that of faulty maintenance, or a failure to repair. There is no direct evidence that in tapping or hammering the nails or brads back into the same holes of the stair tread as they were originally driven would make the condition thereof worse. Even if it could be properly inferred that Mr. Elms knew that his act in so driving the nails back into the same holes would lessen the effect of the nails in holding the strip to the tread, and

the security of the strip to the tread would be weakened, we deem that such would be an ordinary fault or omission (not an ultrahazardous condition) which a guest should accept and the risk of which he should assume. Wolfson v. Chelist, supra, loc. cit. 284 S.W.2d 450. Plaintiff freely acknowledges that a failure to make repairs is passive negligence, for which defendants would not be liable. In her brief, however, plaintiff argues that this court is leaning toward the view in Sec. 342, Rest. Torts, that "A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he (a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and (b) invites or permits them to enter or remain upon the land, without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to warn them of the condition and the risk involved therein." As is apparent from the phraseology of said Sec. 342, the matter of a licensee taking the premises of his licensor as he finds them (Wolfson v. Chelist, supra) would no longer be the law if Sec. 342 were adopted in this state. It is for this reason that Missouri courts have not adopted the restatement rule with respect to licensees. See Stevenson v. Kansas City Southern Ry. Co., 348 Mo. 1216, 159 S.W.2d 260, 263; and Porchey v. Kelling, supra, loc. cit. 185 S.W.2d 823 [4], and cases there cited. Plaintiff cites McVicar v. W. R. Arthur & Company, Mo., 312 S.W.2d 805, 65 A.L.R.2d 785, in support of this argument. That was a trespasser case and the plaintiff was injured when he leaned into a trailer when the driver of a tractor was attaching thereto and had not discovered plaintiff in a position of peril, hence he was not permitted to recover as a matter of law. The court there announced no new rule in this state but merely commented upon and discussed the rules in some jurisdictions with respect to trespassers (loc. cit. 312 S.W.2d 814 [10–14]). The recent case of Bartels v.

Continental Oil Co., Mo., 384 S.W.2d 667, is of no aid to plaintiff in this argument because it was there unnecessary to discuss the status of the plaintiffs' decedent. By reason of the pronouncements in the Stevenson and Porchey cases, supra, neither overruled, it is still the law in this state that a licensee takes the premises of his licensor as he finds them (absent evidence of an ultrahazardous condition, pitfall or trap of which the licensor has knowledge but the licensee does not), and therefore the restatement rule (§ 342, supra) is inapplicable.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.