**William H. RUPERT and Ernestine M. Rupert, Plaintiffs-Appellants,**

v.

**Grace E. HUFFMAN, Defendant-Respondent.**

No. 51947.

Supreme Court of Missouri, Division No. 2.

April 10, 1967.

Sprague, Wilcox & Houts, St. Joseph, for plaintiffs-appellants.

O. W. Watkins, Jr., J. W. Roberts, and Strop, Watkins, Roberts & Hale, St. Joseph, Don Pierce, Downs & Pierce, St. Joseph, for defendant-respondent.

FINCH, Judge.

This is an action in two counts wherein the wife (Mrs. Rupert) sought $35,000 for personal injuries and her husband (Mr. Rupert) sought $15,000 for loss of services and for expenses suffered and incurred as a result of a fall by the wife in the home of defendant. The jury returned a verdict for defendant and plaintiffs appeal from the judgment entered thereon.

Mr. Rupert has been a bricklayer most of his life. He is employed by Armour & Company's St. Joseph plant but he sometimes does outside contracting. He has been acquainted with the defendant a number of years and is a frequent customer of a tavern operated by her. Once, sometime in the 1950's, he bid on the construction of a new house which defendant and her husband were planning to build, but he was not the successful bidder on that job.

Defendant, now a widow, bought a new brick house at 3513 Beck Road, St. Joseph, Missouri, late in 1962. Some bricks from the job were left over and defendant wanted to have a planter built. On one occasion when Mr. Rupert was in the tavern, defendant mentioned to him that she wanted to build a planter if she had enough bricks. She also wanted to know the cost of building such a planter. On April 22, 1962, Mr. Rupert was in the tavern at noon and he and defendant again discussed the subject, and it was agreed that Mr. Rupert would stop by defendant's house to look over the situation.

Mrs. Rupert also was employed and Mr. Rupert picked her up when she finished work on the afternoon of April 22. After supper, Mr. Rupert told his wife that he was going by defendant's house and asked her if she wanted to ride out there, and she replied that she did. They dropped a daughter at a friend's house and then drove to defendant's home, where Mr. Rupert parked the car on the street and went to the door of the house and knocked. Mrs. Rupert remained in the car. When defendant came to the door she noticed Mrs. Rupert and told Mr. Rupert to have his wife come on in. He went back to the car and helped his wife out of the car and brought her in.

The front door of the house opened into the living room. Back of the living room was the dining area, which was an extension of the living room. There were oriental rugs on the floor of the living room and dining room and a small oriental throw rug was in the doorway between the dining room and the kitchen.

The defendant and Mr. and Mrs. Rupert went through the living room and dining room and on into the kitchen. From the kitchen they went downstairs to the basement. The garage was in the basement and the defendant opened the garage door and pointed out to Mr. Rupert the bricks which were outside the garage door. He counted the bricks and laid them out, after which Mr. and Mrs. Rupert and the defendant went back up the stairs into the kitchen and then into the dining room. From that point, Mr. Rupert and the defendant looked out a picture window onto a concrete patio where defendant thought she wanted the planter constructed. Mr. Rupert and the defendant discussed the planter location, and there was discussion as to whether she would want a long single planter or two separate planters. Meanwhile, Mrs. Rupert apparently had placed her purse on a chair in the kitchen as they first went to the basement and she went from the dining room back into the kitchen to get her purse. As she was returning from the kitchen to the dining room, she stepped on the small oriental rug in the doorway between the kitchen and dining room and slipped, resulting in a fall which caused the fracture and injuries for which this suit is brought. Plaintiffs' evidence was that the hardwood floor on which the throw rug lay was waxed and slick and that there was no pad under the throw rug. The hardwood floor was visible around the edges of the large oriental rugs as well as around the edges of the throw rug.

The only issue raised by plaintiffs on this appeal is the propriety of one of the instructions given by the court at the request of the defendant. Defendant insists on the correctness of that instruction, but contends further that the trial court should have sustained her motion for a directed verdict and that the judgment should be affirmed for this reason. The first point raised by defendant in support of this contention is that Mrs. Rupert was merely a licensee and as such cannot recover on the facts in this case. Plaintiffs concede in their brief, as well as in oral argument, that if Mrs. Rupert was a social guest or licensee, she cannot recover. Defendant also denies the right of plaintiff to recover even if she was an invitee, but, of course, we need not reach that question if her status was that of a licensee.

Mr. Rupert was an invitee. The disputed question is whether the status of Mrs. Rupert was that of invitee or licensee.

In the first place, we must recognize that we are not dealing with premises to which the public is invited. This was a private residence, not a place of business. Mr. Rupert was an invitee on these premises because he came pursuant to prearrangement for business talks with the defendant concerning possible construction of a planter at defendant's home. However, Mrs. Rupert had not been involved in those arrangements. So far as the evidence discloses, there was no arrangement that Mrs. Rupert would accompany her husband, nor was there anything to indicate that defendant even knew that Mrs. Rupert would come along. The evidence shows that she ac-

companied her husband only because he inquired, after they finished their supper, whether she would like to ride along on his trip to defendant's home to check about the planter. She had no purpose, so far as the evidence shows, other than to simply go along for the ride.

When they arrived at defendant's home, Mr. Rupert parked the car on the street and then got out and went to the front door and knocked. Mrs. Rupert remained in the car. When defendant came to the door and observed Mrs. Rupert sitting in the car, she told Mr. Rupert to invite her in. Mrs. Rupert and the defendant had never exchanged home visits previously but did have a speaking acquaintanceship.

When Mr. and Mrs. Rupert went into the house, Mr. Rupert proceeded to check on the bricks and discuss with the defendant the location and size of the planter and whether there was a sufficient number of bricks for that purpose. Mrs. Rupert walked along with them to the basement and back to the dining room, but the record does not indicate that she participated in any of these negotiations or conversations with reference to the planter. So far as the evidence discloses, she did nothing with reference to the business at hand.

■ We hold that Mrs. Rupert was a social guest, not a business invitee. The facts and reasonable inferences therefrom, viewed in the light most favorable to plaintiffs, cause us to conclude that the invitation extended by defendant to Mrs. Rupert to come into the house was merely a social courtesy and nothing more. Plaintiffs seek to find a business purpose or a benefit to defendant in the visit. For example, they say defendant thought that by being nice to Mrs. Rupert, she might get a better price. They also say that defendant knew that such courtesy would be beneficial because Mr. Rupert was a customer of her tavern. They even argue that defendant was a widow, living in a nice neighborhood, and that it was advantageous to her for both Mr. and Mrs. Rupert to come into the house rather than for her to have Mr. Rupert alone come in. By these arguments, plaintiffs seek to relate the visit by Mrs. Rupert to the "benefit, pleasure and convenience" of the owner, as these words were used in the case of Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 3, 22 L.R.A.,N.S., 1045.

In our judgment, plaintiffs do not on any of these bases establish benefit to defendant so as to change the status of Mrs. Rupert from that of a licensee to that of an invitee. There was no evidence to substantiate any of these alleged purposes for the visit by Mrs. Rupert. These arguments advanced on behalf of plaintiffs are reminiscent of the contention made in Connole v. Floyd Plant Food Co., Mo.App., 96 S.W. 2d 655, wherein the father-in-law of the plant superintendent, at the invitation of the latter, accompanied him to the defendant's plant. While the father-in-law was being conducted around on a sightseeing trip, he stepped off a platform and the fall resulted in his death. At the time, the father-in-law was with the superintendent and another employee who were conferring about the plant operations. The argument was advanced that the fact that the deceased had been admitted to the plant and was with these men benefitted the defendant's business in that it enabled the employees in their conference to give undivided attention to the defendant's business and avoided the necessity of their conference being cut short by reason of anxiety on the part of the plant superintendent for his father-in-law had he been left outside. The Court of Appeals concludes that it does not agree that the fact that the father-in-law accompanied the superintendent on his rounds of the plant was a benefit to the company or that the father-in-law would have been on his mind if he had been left outside, resulting in his doing the business and work more quickly and less thoroughly. The father-in-law was held to be a mere licensee.

The nature and purpose of the entry by Mrs. Rupert into the defendant's home was not a business one and was not such as to

make her an invitee, unless it is on the basis that one who enters a home with an invitee under such circumstances thereby automatically becomes an invitee. Plaintiffs cite various cases which they assert involve persons accompanying business invitees to an owner's premises in which such persons were held to be invitees rather than licensees. One such case is Hammontree v. Edison Bros. Stores, Mo.App., 270 S.W.2d 117. The plaintiff, a 1½ year old child, accompanied its mother to a shoe store and injured its hand in the door. The child was held to be an invitee. However, that involved a business place where the public was invited and expected. As was said in another Court of Appeals case, Miller v. Geo. B. Peck Dry Goods Co., 104 Mo.App. 609, 78 S.W. 682, the invitation to the trading public to come to the store included an invitation for children to be brought there by their parents, and such children occupied the status of invitees. Another case cited is Holdaway v. Lusk, Mo.App., 194 S.W. 891. In that case a widow, who was also a merchant, went to the freight depot in the evening to get an expected freight shipment and she requested her friend, the plaintiff, to accompany her. Plaintiff stepped in a hole on the platform and was injured. This case also involved public premises to which the public was invited and expected and is not similar or comparable to a case involving residential premises to which the public generally is not invited.

■ It is our view that one who merely accompanies an invitee to residential or private premises, not for any participation in the business purposes of the trip, but for his own pleasure or purposes, is properly held to be a licensee, not an invitee. See Henry H. Cross Co. v. Simmons, 8 Cir., 96 F.2d 482 [10]; 65 C.J.S. Negligence § 63(142), p. 928. This is not changed by the fact that the owner, as here, invites the companion to come in instead of waiting outside. If the nature of the invitation is social or one of mere courtesy, the recipient of that invitation occupies the same status as the usual social guest. The fact that a social guest normally may be a friend, rather than a mere speaking acquaintance, does not result in a different relationship than when the invited guest (non-business) is a mere speaking acquaintance or even a stranger.

■ The evidence was not sufficient in this case to make a submissible case on behalf of a licensee. Wolfson v. Chelist, Mo., 284 S.W.2d 447; Zeigler v. Elms, Mo., 388 S.W.2d 839; Anno: "Injury to Social Guest," 25 A.L.R.2d 598. In view of the fact that plaintiffs so recognize if, in fact, Mrs. Rupert was a mere licensee, there is no need to elaborate.

The disposition which we make of this case renders it unnecessary for us to consider the instruction of which plaintiffs complain.

The judgment is affirmed.

All of the Judges concur.