**William BICHSEL et al., Respondents,**

v.

**Laney BLUMHOST et al., Appellants.**

**No. 24622.**

Kansas City Court of Appeals.

Missouri.

June 3, 1968.

Charles B. Fitzgerald, Crouch & Fitzgerald, Warrensburg, Floyd L. Sperry, Jr., Clinton, Hale Houts, Thad C. McCanse, Houts, James, McCanse & Larison, Kansas City, for appellants.

Barkley M. Brock and Julius F. Wall, of Poague, Brock & Wall, Clinton, for respondents.

FRANK D. CONNETT, Jr., Special Judge.

On Sunday morning, February 7, 1965, about 9:00 a. m., Patricia Bichsel drove into Deepwater, Missouri, a town of about 750 population in Henry County, to use the laundromat. Her child, Jodie, an alert, normal, five year old boy, accompanied her. Jodie played inside the laundromat until about 9:30 a. m. when he went outside. About 9:40 a. m., Mrs. Bichsel took some clothes out to the car and saw Jodie playing with some kittens on the steps of the nearby old telephone building owned by Mr. and Mrs. Oscar Blumhost and their son, Laney. Ten minutes later she came back out and could not find Jodie. A search was commenced in which many people participated and about 11:00 a. m. Jodie's body was found in a well located on a vacant lot, also owned by the Blumhosts, situated between the laundromat and the old telephone building. The cause of death was drowning. No one saw the boy between 9:40 a. m. and the time of the recovery of the body from the well.

This vacant lot, generally level, was twenty-five feet wide north and south and one hundred fifty feet deep east and west. There was a concrete sidewalk along the west side of the lot bordering Main Street and an alley at the east end. Across the alley to the east was a public park. The laundromat was on the lot immediately south of the vacant lot and the old telephone building on the lot immediately north of the vacant lot. The well was about fifty-five feet east of the sidewalk and in about the middle of the lot. It was about four feet in diameter, the level of the water, which was eighteen to twenty feet deep, was eight to ten feet below the ground level. Defendants never used the well and defendant Laney Blumhost, with the intention of eventually filling the well, had on two or three occasions put old glass into it. It was covered by a concrete slab six and one-half feet square and flush with the ground. The opening in the middle was eighteen inches square. This opening had in the past been covered with an opened trunk from an old model touring car. With the lid open and the trunk on its back it covered an area thirty inches by thirty inches. Estimates of the trunk's weight ranged from fifteen to forty pounds.

Laney Blumhost testified that in the summer of 1964 he placed a sixteen by eighteen inch tile block weighing twenty-five to thirty pounds in each portion of the trunk, i. e. the lid and the back of the bottom. He also testified he saw these tile in place a few days before the tragedy. However, the trunk was sitting upright five or six inches from the well with no tile in it or around it when the body was discovered. Either the well was uncovered and the boy fell in, or the boy moved the covering and then fell in. Sometime later Laney Blumhost located one tile on the north side of the telephone building and the other under some junk near the well. Glenn Briggs, owner of the laundromat, testified he drew water from the well in the summer and fall of 1964 and the tile were not in the trunk at that time.

There were scattered about the vacant lot four "junker" automobiles with the doors off, also numerous fenders, grills and bumpers. A combine was parked near the west end of the lot. Laney Blumhost operated an automobile paint and repair shop on the lower floor of the old telephone building. There was a side door on the south side of the building. A well-beaten dirt path ran through the lot from the sidewalk to this south door and then on back to the alley. This path passed within three feet of the well. Small children were known by Laney Blumhost to play on the front part of the lot. People in general used the lot to go from the sidewalk to the park. Other witnesses had seen children playing all over the lot at different times. Laney Blumhost did not object to children playing on this lot.

Patricia Bichsel and her husband William, parents of Jodie, brought suit against the Blumhosts in Henry County for the

wrongful death of their son. Plaintiffs recovered a verdict from the jury in the amount of Ten Thousand Dollars ($10,000.00). Defendants filed a motion to set aside the verdict and enter judgment in their favor because plaintiffs failed to make a submissible case. This motion was denied and defendants appealed. Plaintiffs went to the jury solely on Instruction No. 2 which required the jury to believe, among other things, that "Defendants maintained an open well without a permanently attached cover over the opening and as a result said well was a pitfall and a trap and was not reasonably safe", and, further, that "Defendants failed to use ordinary care to attach a covering over the opening in the well". There is little, if any, dispute about the facts. Because of defendants' knowledge that small children habitually played on this lot with no objection on their part, it is agreed by the parties that deceased was present on defendants' premises with the implied consent of defendants and that his status was that of a bare licensee.

■ The basic rule in these cases is that the possessor of land owes no duty to a licensee as to maintenance, but that the licensee takes the premises as he finds them. Defendants' contention that plaintiffs failed to make a submissible case is based upon the premise that since the child was no more than a licensee, the defendants owed no duty to him. Absent a duty there is no liability. However, plaintiffs contend that there is an exception to this rule in that if the possessor of land maintains a trap or pitfall on the land and a licensee is injured therein, the possessor is liable; and, further, that the well in this case was a trap or pitfall. Our question then is whether the maintenance of a trap or pitfall is an exception to the rule that a licensee takes the premises as he finds them, and if so, was the well in this case such a trap or pitfall?

■ There are, of course, exceptions to the general rule. The landowner is liable for affirmative negligent acts. Another exception, "usually stated as part of the rule, is that the landowner may not willfully or wantonly injure the trespasser or licensee." Boyer v. Guidicy Marble, Terrazzo & Tile Co., Mo., 246 S.W.2d 742, 745. Another is the "hard-by" rule where liability is incurred by maintenance "of an artificial and hazardous condition so close by a public way that a traveler, who *inadvertently deviates*, may be injured." Patterson v. Gibson, Mo., 287 S.W.2d 853, 856. Another exception is where railroads have been held to have the duty to exercise ordinary care to avoid injury to trespassers or licensees in places where they have reason to anticipate the presence of people. Everett v. St. Louis & S. F. R. Co., 214 Mo. 54, 112 S.W. 486. Anhefeld v. Wabash R. Co., 212 Mo. 280, 111 S.W. 95. The explosive material cases constitute another exception. See Boyer v. Guidicy Marble, Terrazzo & Tile Co., supra. The attractive nuisance doctrine is an exception to this rule with which we are not concerned because plaintiffs explicitly state they are not relying on such doctrine. They stand on the proposition that the maintenance of the well in the condition and under the circumstances of this case was a trap or pitfall which caused the death of plaintiffs' child and thus defendants are liable.

There were no cases cited by the parties, and the court on independent research could find only one in Missouri, dealing with the drowning of a child in a well. In Leeright v. Ahrens, 60 Mo.App. 118, the court upheld a judgment of Two Hundred and Fifty Dollars ($250.00) for the wrongful death of a ten year old child by drowning in a cistern. The cistern was boxed in with boards which had become old and weak. The child while playing hide and seek fell in and drowned. The owner was aware that children played there and that the well box had deteriorated. The court's opinion was principally concerned with whether there was sufficient evidence to support the jury's verdict. The court did

not discuss the status of the child or theories of liability, but did state that the well was a nuisance. The parties were unable to cite any cases wherein a person had been injured by reason of a trap or pitfall.

In Gilliland v. Bondurant, 332 Mo. 881, 59 S.W.2d 679, 687, the Supreme Court in a case determining the injured party to be an invitee by implication, stated that as to licensees, "* * * the only duty of the owner is that he must not willfully or wantonly injure him, or *knowingly let him go into a hidden peril*, or otherwise, by an affirmative negligent act, injure him after his presence is or should be discovered in a position of danger. He owes him no affirmative duty of care to protect him * * *" (Emphasis added) In Anderson v. Cinnamon, 365 Mo. 304, 282 S.W.2d 445, 448, the court en banc following Gilliland states: "* * * We think the explosive material cases are a good example of what is meant by letting one go into hidden peril and some of them are set out in the footnotes to 45 C.J. 796 which we cited in connection with that statement * * * Thus it is unusual hazard that requires warning to licensees * * *" This was a suit by a fireman injured while fighting a fire by the collapse of a porch due to structural weakness. Since the fireman was a licensee, the court discussed the duty of the landowner to licensees and held this was not an unusual hazard, and thus there was no duty to warn. In Wolfson v. Chelist, Mo.App., 278 S.W.2d 39, 47, affirmed by the Supreme Court in 284 S.W.2d 447, a social guest slipped and fell on a grease spot on the backstairs. The court said that "* * * a gratuitous licensee takes the premises as he finds them, and in the absence of wanton or willful acts or active or affirmative negligence on the part of the licensor or possessor of the property, he cannot recover. Failure of the licensor to warn his guest of a hidden peril highly dangerous to life or limb, such as a trap, pitfall or dangerous hole would subject him to liability under this rule." In Ziegler v. Elms, Mo., 388 S.W.2d 839, 842, in a suit by a social guest (licensee) for injury suffered by tripping on a loose metal molding strip on a stairway, the court in refusing to adopt Section 342, Restatement of Torts, said: "* * * it is still the law in this state that a licensee takes the premises of his licensor as he finds them (absent evidence of an ultrahazardous condition, pitfall or trap of which the licensor has knowledge but the licensee does not) * * *" In 45 C.J., Negligence, Section 211, p. 805, it is stated:

"In the case of a licensee liability for an injury may be predicated on negligence in leaving something in the nature of a trap or pitfall at a place where his presence might have been anticipated, although there was no intention to cause any injury, for there is a duty to a licensee not to set traps for him."

65 C.J.S. Negligence § 63(39), p. 712, repeats in substance the foregoing statement from Corpus Juris and adds:

"* * * The duty of the owner or occupant not to injure a licensee willfully or wantonly includes the obligation not to lay for him or permit to exist pitfalls or mantraps in which it may be reasonably anticipated he will become ensnared. The owner or occupant must not create an entrapment to the danger of a licensee unless he discloses its existence or warns against its hazards.

"A 'trap' has been defined as a danger which a person who does not know the premises could not avoid by reasonable care and skill, a hidden danger lurking on the premises which may be avoided if known. The word 'trap' as now used generally means any kind of a hidden dangerous condition. * * *"

See also 38 Am.Jur., Negligence, Section 118, pp. 781, 782.

There are other cases in Missouri stating that the possessor of land owes no duty to a licensee to make the premises safe or warn him of dangerous conditions. These cases seem to stem from the case of Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1,

where Judge Lamm, in deciding that a person who came to the owner's premises at owner's invitation to discuss mutual business and fell into an elevator pit in the basement while on a trip to the water-closet was an invitee as opposed to a licensee, discussed the duty owed to a licensee by the owner of the premises. He stated: " * * * The general rule is that the owner or occupier of premises lies under no duty to protect those from injury who go upon the premises as volunteers, or merely with his express or tacit permission, from motives of curiosity or private convenience, in no way connected with business or other relations with the owner or occupier. (Citing cases) A bare licensee (barring wantonness, or some form of intentional wrong or active negligence by the owner or occupier) takes the premises as he finds them. * * * Mere permission, without more, involves 'leave and license,' but bestows no right to care. If A. give B. leave to hunt mushroons for his table in A.'s field, and B. fall into a ditch or uncovered pit, and is harmed, no duty was raised, no breach is made, and hence no action lies * * *" The Missouri authority for Glaser v. Rothschild is Judge Lamm's opinion in Kelly v. Benas, 217 Mo. 1, 116 S.W. 557, 559, where a nine year old trespasser was killed by falling lumber inadequately piled in a lumber yard. Judge Lamm in that case stated the rule that volunteers, licensees and trespassers take the premises as they find them, and added that: "* * * the owner being liable only for concealed spring guns, or other hidden traps intentionally put out to injure them, or any form of willful, illegal force used towards them * * *" In declining to extend the turntable cases doctrine to that case, he remarked that to extend the doctrine would make the landowner liable for a long list of different types of casualties. Among those listed was, "* * * for those who fall into uncovered wells, cisterns, and cellars (the notion of playing on the brink of such being a boyish one) * * *"

Other cases cited by defendants and following this rule or statement concerning hidden dangers, are Porchey v. Kelling, 353 Mo. 1034, 185 S.W.2d 820, (a case concerning a person using a short cut at night and falling into an open grease pit maintained by a service station. Although the court did not discuss the exception with which we are concerned here, it did say: "* * * A danger concealed only by the darkness of night does not make a licensor liable * * *"); Stevenson v. Kansas City Southern Ry. Co., 348 Mo. 1216, 159 S.W. 2d 260 (an adult injured by the collapse of a building under construction); Twine v. Norris Grain Company, 241 Mo.App. 7, 226 S.W.2d 415 (a sixteen year old burned by electricity in a substation while attempting to catch pigeons); and Richey v. Kemper, Mo., 392 S.W.2d 266 (a twelve year old boy injured by tripping over some trash concealed by weeds in a place where defendant knew that children played). Other cases cited by the defendants, such as Patterson v. Gibson, Mo., 287 S.W.2d 853, held that the loose boards upon which the child fell and was injured did not constitute an inherently dangerous instrumentality and were not hidden. Holifield v. Wigdor, Mo., 235 S.W.2d 564, concerns a five year old child drowning in a water-filled excavation which had been there five days. The court denied the application of the attractive nuisance doctrine, finding that this was not inherently dangerous and that there was no maintenance of a nuisance because the hole had been there filled with water less than five days.

Glaser v. Rothschild and Kelly v. Benas, supra, do say arguendo that the owner would not be liable for injuries caused by falling into a well or pit, however, this was dictum. The cases did not pertain to wells, or even ultrahazardous conditions or hidden peril. Neither did any of the other cases cited by defendants which followed the rule as announced in Glaser v. Rothschild, supra.

It is equally true that Gilliland v. Bondurant; Anderson v. Cinnamon; Wolfson v. Chelist; and Ziegler v. Elms, supra, are not cases concerning wells or cisterns.

With the exception of the Gilliland case, they do discuss hidden dangers and ultrahazardous conditions. The court in the three latter cases said that there was liability to a licensee for injury caused by negligence in connection with unusual hazards or ultrahazardous conditions, or traps and pitfalls, but that such hazard was not in these cases.

It may be noted that all the exceptions mentioned above, i. e. the "hard-by" rule, the explosive cases, the railroad cases and the attractive nuisance doctrine, pertain either to hazardous conditions or dangerous instrumentalities in places where one should reasonably expect people to be, whether trespassers or licensees. The failure to use ordinary care to prevent injury to a person reasonably expected to be within range of a dangerous activity or hidden peril, has been held to be equivalent to willful and wanton conduct. 65 C.J.S. Negligence § 63(38), p. 710; Everett v. St. Louis & S. F. R. Co., supra; Cole v. Metropolitan St. R. Co., 121 Mo.App. 605, 97 S.W. 555, 557. See also Cox v. Terminal Railroad Ass'n of St. Louis, 331 Mo. 910, 55 S.W.2d 685, 686. All the cases agree that the occupier of land is liable for injuries arising from willful or wanton conduct. If such be the rationale of these exceptions, then the failure to guard against injury caused by maintenance of a trap or pitfall which was an ultrahazardous hidden peril, in a place where people could reasonably be expected to be, would also be willful and wanton conduct.

▮▮▮ Thus from the cases of Leeright v. Ahrens; Gilliland v. Bondurant; Anderson v. Cinnamon; Wolfson v. Chelist; and Ziegler v. Elms, supra, we deduce the law in Missouri to be that the maintenance of a trap or pitfall of which the owner has knowledge but the licensee has not, is an exception to the rule that a licensee takes the premises as he finds them, *provided* the trap or pitfall is an ultrahazardous hidden peril. Although none of the cases define ultrahazardous, the term should be considered as including "highly dangerous to life

and limb." See Wolfson v. Chelist, supra. It probably is synonymous with the term "inherently dangerous" as used in the attractive nuisance cases, i. e., "* * * danger inheres in the instrumentality or condition itself, at all times, so as to require special precautions to be taken with regard to it to prevent injury; * * *" Hull v. Gillioz, 344 Mo. 1227, 130 S.W.2d 623, 628. The words "trap" and "pitfall" are common words and it would be impossible and impractical to try to state what might or might not be included in such terms. It should be sufficient to say that the trap or pitfall which would raise a duty of care on the part of owner or occupier running to a licensee, must be an ultrahazardous hidden peril of which an occupier has knowledge but the licensee does not. Further, it is not necessary that such trap or pitfall be designed or intended to catch or entrap anything.

We are of the opinion that a jury could reasonably find that the well in this case was such a trap or pitfall. The well was located among old junker cars and body parts, with an old car trunk either covering it or close by. Such covering was easily moved either by this child or one of the other children who often played there. We can think of nothing more hazardous to a child than an open well with water in it. One can fall into a fairly deep pit and survive. One can fall into a pond, even without the ability to swim, and have some chance of survival—a chance to cry for help and perhaps be rescued. But unless someone should see a person in the act of falling into a well with water in it, there would be almost no chance of survival. This well with twenty feet of water in it, with old glass at the bottom, was almost certain death to any child that might fall into it. Further, the danger of such well, while apparent to an adult, or even a teenager, would certainly not be apparent to a five year old child. The water level was ten feet below the ground and the hole in the top of the well only eighteen inches square. One looking down into such well may see nothing, or a reflection, depending

upon the light. Thus the danger or peril was hidden as far as this child was concerned. We are not saying that every open pit and hole is an ultrahazardous condition, but an open or inadequately covered well or cistern, with water in it, is almost certain death to any child that might tumble into it. Further, it might not be amiss to remark that at the turn of the century, the time of the Kelly and Glaser cases, wells were common and in general use, a common hazard of life, (although surely not maintained in the same condition as this well) whereas, today a well is an uncommon hazard.

Whether the application of this exception is or should be limited as it is in the attractive nuisance cases (see Hull v. Gillioz, supra) to cases where the utility to the possessor of maintaining the condition is slight compared to the risk of injury to a child involved therein, is not a determinate to a decision in this case. For such is the case here. This well was all but abandoned. Further, it could have been made secure at little expense and no inconvenience to the owner.

Respondent argues that deceased must have moved the car trunk, and in the process inadvertently fell into the well. Appellant points out there was no evidence that such occurred and that such a theory is speculation. There is no way of determining whether the well was uncovered by someone else and the boy fell in, or whether the boy uncovered it himself and fell in. In our view of the case it makes no difference. The maintenance of this well with an old trunk for a cover, in a place where children play, was an inherently dangerous, ultrahazardous condition, the peril of which was hidden to a five year old boy, and was thereby a trap or pitfall, whether or not the opening in the well was covered with the trunk at the time of the tragedy. Exactly how the child fell into the well is not important if there was sufficient evidence for the jury to infer that the child fell in as a result of defendants' failure to provide an adequate cover. Leeright v. Ahrens, supra. We find that there was.

Judgment for plaintiffs is affirmed.

HOWARD, P. J., and CROSS, J., concur.

MORGAN, J., not participating because not a member of the court when case was submitted.