John POXON and Delores Poxon, Plaintiffs,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION, and Bruno Blash.

No. 3–679A182.

Court of Appeals of Indiana, Third District.

July 28, 1980.

Frank J. Galvin, Jr., Galvin & Galvin, Hammond, for General Motors Acceptance Corp.

Roy Dakich, Merrillville, for Bruno Blash.

Thomas R. Bullard, Cohen, Cohen & Bullard, East Chicago, for plaintiffs.

STATON, Judge.

John Poxon and his wife, Delores, filed a negligence action against General Motors Acceptance Corporation (GMAC) and Bruno Blash (Blash) for injuries sustained as the result of an automobile collision. The Poxons alleged that Blash, as an employee and agent of GMAC, negligently operated his vehicle so as to cause property damage to their automobile and personal injury to Poxon. The jury found for the Poxons and against GMAC and Blash and assessed the damages at $4,000. The court entered judgment accordingly.

On appeal, GMAC, as the sole appellant, raises four issues for our consideration:

(1) Was the court's denial of a line of questioning concerning an independent contractor defense during the voir dire, a reversible error?

(2) Did the trial court err in its denial of GMAC's motion for summary judgment?

(3) Did the court commit error by denying GMAC's motion for judgment on the evidence at the close of all the evidence?

(4) Was it error for the court to modify GMAC's tendered instruction # 5?

We affirm.

The facts relevant to our disposition of the case indicate that Blash, under the business name of the Gary Motor Club, operated an automobile repossession lot for the reconditioning of cars for resale to the public. He worked exclusively with GMAC under the terms of an agreement executed on May 14, 1958. The Agreement on Sale of Repossessions, signed by the GMAC office manager, is as follows:

*"Agreement on Sale of Repossessions*

"Arrangements have been completed with Bruno Blash whereby he will handle the sale of Non-Recourse repossessions for us on the following basis:

"On cars which are assigned to him to retail, he will be paid a commission of 8% on the cash difference drawn with a maximum of $100 per car. Trades will be accepted with valuation prior approved by us established before completion of any transactions. GMAC will pay any reconditioning expense in connection with any Non-Recourse repossessions which we decide to retail, with all reconditioning to be prior approved by GMAC.

"Blash will also handle wholesaling of used cars which are assigned to him for disposal. On junkers with a resale value up to $250, he will receive $10 per car for the sale. On other Non-Recourse repossessions assigned to him to be wholesaled, he will be paid at the rate of $20 per car.

"It was agreed that Mr. Blash will sit in on our Monday morning meetings which are held every Monday in connection with Non-Recourse repossessions, at which time cars will be assigned to him to be either wholesaled or retailed. Prices will be established by us for each car individually on either a wholesale or retail basis, depending upon whether the car is to be wholesaled or retailed."

## I.

### Voir Dire

GMAC contends that it was prejudiced by the court's denial, during the voir dire, of "the opportunity to inquire as to any prejudices the jury may have concerning any specific defenses such as contributory negligence with relation to the independent contractor defense." The Poxons, in their appellees' brief, explain that prior to the voir dire, both parties had been admonished not to elicit promises from the jury with respect to hypothetical factual questions concerning respondeat superior. The Poxons claim that the court was forced to give the admonition about which GMAC complains only after the company had repeatedly attempted "to try its case during voir dire."

█ We are unable to make a determination as to this claim of error. Despite GMAC's assertions, it has not presented to us a sufficient record which would permit appellate review. There is nothing in the record, beyond a statement that "Voir dire conducted" to indicate that anything occurred. Since it is the duty of the appellant to make a proper record, this failure bars our consideration of this claim of error. *Mendez v. State* (1977), 267 Ind. 309, 370 N.E.2d 323. We cannot consider matters outside the record. An error alleged, but not revealed by the record is not a proper subject for our review. *Hall v. State* (1980), Ind., 405 N.E.2d 530; *Mendez v. State, supra.*

## II.

### Summary Judgment

█ A summary judgment is a procedure for applying the law to the facts, when there is no factual controversy. It is not a procedure for trying the facts and for determining the preponderance of the evidence. *Krueger et al. v. Bailey et al.* (1980), Ind.App., 406 N.E.2d 665. (See Ind.Rules of Procedure, Trial Rule 56(C)). The party seeking a summary judgment has the burden of establishing that there are no genuine issues as to any material fact. Any

doubt must be resolved against the movant. *Ang v. Hospital Corp. of America* (1979), Ind.App., 395 N.E.2d 441. Even if the facts are not in dispute, a summary judgment is not appropriate when the information before the court discloses a good faith dispute as to the inferences to be drawn from these facts. *Krueger et al. v. Bailey et al., supra; Hale v. Peabody Coal Company* (1976), Ind. App., 343 N.E.2d 316.

In determining whether to grant a motion for summary judgment, the court considers the facts set forth in the non-moving party's affidavits as true and construes the products of discovery liberally in his favor. *Ang v. Hospital Corp. of America, supra.* Pleadings, evidence, and inferences are to be viewed in a light most favorable to the party against whom the summary judgment is sought. *Randolph v. Wolff* (1978), Ind.App., 374 N.E.2d 533. Only if no issue as to a material fact is raised, may the court grant a summary judgment. To defeat such a motion, the opposing party only needs to show that a material fact is genuinely in issue. *Brandon v. State* (1976), 264 Ind. 177, 340 N.E.2d 756.

On June 3, 1977, GMAC filed a motion for summary judgment alleging that Blash was not its representative, employee or agent. Rather, it argued, Blash was operating as an independent contractor with reference to GMAC. The company attached to its motion an affidavit of its assistant control manager who stated, among other things, that Blash was not employed by GMAC. On August 22, 1977, the Poxons filed a motion in opposition to GMAC's motion for summary judgment. This motion included information obtained from a deposition of Blash taken on June 3, 1977, a memorandum of law and the Agreement on Sale of Repossessions. On August 25, 1977, the court denied GMAC's motion for summary judgment.

Urging that the court should have granted its motion for summary judgment, GMAC explains that "when a party supports a motion for summary judgment with affidavits, the adverse party may not rest upon mere allegations or denials but the response must set forth specific facts showing there is a genuine issue for trial." *Citing Augustine v. First Fed. Sav. & L. Ass'n of Gary* (1979), Ind., 384 N.E.2d 1018, it argues that Blash's deposition could not properly be considered by the court in ruling upon the motion for summary judgment because the deposition had not been published.

In considering, on appeal, the granting of three summary judgments by the trial court, the Court of Appeals in *Augustine v. First Fed. Sav. & Loan Ass'n of Gary* (1978), Ind.App., 373 N.E.2d 181, had broken the seals on depositions which had not been published. After reading them, it had determined that contained therein was testimony which raised a genuine issue of material fact between the parties. Accordingly, the Court of Appeals had reversed the trial court's granting of the summary judgments. Only one party petitioned the Indiana Supreme Court for transfer.

On appeal of this question, our Supreme Court in *Augustine* vacated a portion of the Court of Appeals' opinion by holding that in order to place a deposition before the court, publication is required. A deposition, it said, cannot be taken into account by the court in ruling on any motions of the parties until it is published by order of the court upon a motion of either party. *Augustine v. First Fed. Sav. & L. Ass'n of Gary, supra*, at 1020.

There is no question that the holding in *Augustine* limits a court's consideration to published, rather than unpublished, depositions in ruling upon a motion. It is, however, unclear as to whether a court may consider *information extracted* from an unpublished deposition which is incorporated into a motion. In the case at bar, there is no showing that the court relied upon Blash's unpublished deposition in its denial of GMAC's motion for summary judgment. Rather, it appears that the court relied upon the informations set forth in the Poxons' motion in opposition to GMAC's motion for summary judgment. This information had been obtained from the unpublished Blash deposition.

This Court need not ponder whether the time is at hand to extend the rule announced in *Augustine* to information extracted from unpublished depositions. We note that the Poxons' motion in opposition to GMAC's motion for summary judgment contained the Agreement on Sale of Repossessions. Clearly, this document was sufficient to indicate to the court that there was a genuine issue of fact as to whether Blash was an employee, agent or representative of GMAC.[1] The company's motion for summary judgment was properly denied.[2]

### III.

### Judgment on the Evidence

■ GMAC next contends that the court erred in its denial of the company's motion for judgment on the evidence at the close of all the evidence. In ruling on a motion for judgment on the evidence, the trial court must consider only that evidence and the reasonable inferences favorable to the non-moving party. *Ortho Pharmaceutical Corp. v. Chapman* (1979), Ind.App., 388 N.E.2d 541. If there is any evidence or legitimate inference therefrom tending to support at least one of the allegations or the evidence is such that reasonable persons might differ, a judgment on the evidence is improper. *Stockberger v. Meridian Mut. Ins. Co.* (1979), Ind.App., 395 N.E.2d 1272; *Ortho Pharmaceutical Corp. v. Chapman, supra* ; TR. 50(A).

The record reveals that Blash reconditioned and then sold automobiles which had been repossessed by GMAC. Under the terms of the Agreement on Sale of Repossessions, GMAC assigned the cars to Blash, established the amount and method of payment and required his presence at the company's Monday morning meetings. It was at these weekly meetings that the repossessed cars were assigned to Blash.

GMAC allowed Blash to handle "small items" like the purchase of anti-freeze for the cars without company approval. It then reimbursed him for the expenses accordingly. When, however, mechanical work on a car was indicated, Blash was required to seek approval from the GMAC special collections manager before taking the car to a dealership or a garage.

Blash worked exclusively for GMAC and considered himself an employee of the company even though he operated the lot under the business name of the Gary Motor Club. This was merely a trade name, he explained, used so that he might receive a business discount for automobile parts.

The Gary Motor Club was not an independent business. Not only did GMAC possess two of the three keys to the repossession lot, but it paid the lot rental and utility bills as well. Blash testified that when he started with GMAC in 1958, he was told by the office manager at that time to be on the lot from 9:00 a. m. to 5:00 p. m. Monday through Friday.

■ We conclude that there is a substantial amount of evidence to support the allegations of the existence of employment relationship. Therefore, the trial court most certainly did not err in denying GMAC's motion for judgment on the evidence.

### IV.

### Instructional Error

Finally, GMAC contends that the court committed a reversible error when it refus-

---

1. The court's entry of August 25, 1977, which was corrected Nunc Pro Tunc, further confused the issue. The record discloses a stipulation as of this date that Blash had testified, under oath, in his deposition that he was a GMAC employee. This being the case, it makes little sense to question whether the court's denial of a summary judgment on this basis was error.

2. *See Illinois Valley Acceptance Corp. v. Woodard* (1973), 159 Ind.App. 50, 304 N.E.2d 859 for a discussion of the role of the trial judge in determining whether there is a genuine issue of material fact. The granting of a summary judgment in the absence of counter-affidavits or other documents is not automatic. TR 56(E) specifies that a summary judgment shall be

ed to give the last two sentences[3] of its tendered instruction # 5:

> "I instruct you members of the jury that whether a person is an 'employee' or an 'independent contractor' is a fact to be determined from the evidence. An 'independent contractor' is one who makes an agreement with another to do a piece of work and retains in himself control of the means, methods and manner of producing the result. [The fact that the work is to be done under the direction and to the satisfaction of certain persons representing the employer does not render the person who agreed to do the work an 'employee'. You should consider the attitude of the parties toward each other, the nature of the work and all relevant circumstances.]"

It points us to *Burkett v. Crulo Trucking Company* (1976), Ind.App., 355 N.E.2d 253 for the proposition that it is error for a court to refuse an instruction which covers an essential element of the case when it is supported by some evidence, consistent with the theory of the case and where there is no other instruction covering that area of the law. But the court's modification of its tendered instruction, the company claims that it was precluded from receiving a proper instruction on its theory of defense. This is not the case.

In determining reversible error, the instructions should be read as a whole and the impact of the entire instruction should then be considered. *Richmond v. State* (1979), Ind., 387 N.E.2d 1312. If the substance of an instruction which has been refused is covered by other instructions which have been given, there is no error. *Dahlberg v. Ogle* (1978), Ind., 373 N.E.2d 159.

We note that the trial court *did not refuse* GMAC's tendered instruction on the independent contractor defense; it merely *modified* it. Despite GMAC's assertions to the contrary, the jury was instructed as to the independent contractor defense. Not

only was GMAC's instruction # 5 given, as modified, but the court gave its instruction # 3 as well:

> "A person or corporation employing an independent contractor is not liable for the actions of that contractor."

When viewed in context with the other instructions, we find no error in the court's modification of GMAC's instruction # 5.

Judgment affirmed.

GARRARD, P. J., and HOFFMAN, J., concur.

---

granted only "if appropriate." This determination is to be made by the court.

**3.** The omitted portions of the instruction are bracketed.