**Daniel J. GABOURY, Appellant-Plaintiff,**

v.

**IRELAND ROAD GRACE BRETHREN, INC., and City of South Bend, Appellees-Defendants.**

No. 3–1081A278.

Court of Appeals of Indiana, Third District.

Oct. 26, 1982.

Rehearing Denied Nov. 18, 1982.

J. Christopher Warter, Michael A. Dvorak, South Bend, for appellant-plaintiff.

John R. Obenchain, South Bend, for appellee-defendant Ireland Road Grace Brethren, Inc.

John E. Doran, David T. Ready, South Bend, for appellee-defendant City of South Bend.

STATON, Judge.

At approximately 1:00 o'clock A.M. Daniel Gaboury was riding a Kawasaki 350 motorcycle home via Glenlake Drive in South Bend, Indiana. He intended to turn onto Coral Drive, but he missed the turn. One hundred fifty feet after Coral Drive, Glenlake Drive terminates into the driveway of the Ireland Road Grace Brethren Church. Gaboury decided to turn around in the driveway of the church. He did not know that ten feet up the driveway a cable was stretched across it. He was injured when he struck the cable.

Gaboury sued Ireland Road Grace Brethren, Inc. and the City of South Bend to recover for his injuries and damages. They filed motions for summary judgment, and the trial court granted both summary judgments.

On appeal, Gaboury contends that the trial court erred when it granted the summary judgments.

We reverse.

■ The purpose underlying the summary judgment procedure is to terminate those causes of action which have no factual dispute and which may be determined as a matter of law. This procedure is an aid in eliminating undue burdens upon litigants

and exposing spurious causes. However, the summary judgment procedure must be applied with extreme caution so that a party's right to the fair determination of a genuine issue is not jeopardized; mere improbability of recovery by the plaintiff does not justify summary judgment for a defendant. *Bassett v. Glock* (1977), 174 Ind. App. 439, 368 N.E.2d 18, 20–21.

The summary judgment procedure is an application of the law to the facts when no factual dispute exists. The party seeking the summary judgment, therefore has the burden to establish that there is no genuine issue as to any material fact. Any doubt as to a fact, or an inference to be drawn therefrom, is resolved in favor of the party opposing the motion for summary judgment. *Poxon v. General Motors Acceptance Corp.* (1980), Ind.App., 407 N.E.2d 1181, 1184.

A fact is material if its resolution is decisive of either the action or a relevant secondary issue. *Lee v. Weston* (1980), Ind. App., 402 N.E.2d 23, 24. The factual issue is genuine if it can not be foreclosed by reference to undisputed facts. That is, a factual issue is genuine if those matters properly considered under Ind.Rules of Procedure, Trial Rule 56 evidence a factual dispute requiring the trier of fact to resolve the opposing parties' differing versions. *Stuteville v. Downing* (1979), Ind.App., 391 N.E.2d 629, 631.

Although TR. 56 permits the introduction of affidavits, depositions, admissions, interrogatories and testimony to aid the court in the resolution of the motion for summary judgment, the procedure involved is not a summary trial. *Bassett v. Glock, supra.* In determining whether there is a genuine issue of material fact, the court considers those facts set forth in the opposing party's affidavits as true, and liberally construes the products of discovery in favor of the opposing party. And finally, all pleadings, evidence, and inferences therefrom are viewed in the light most favorable to the opposing party. *Poxon v. General Motors Acceptance Corp., supra.* In re-

viewing a grant of summary judgment, this Court uses the same standard applicable to the trial court. *Richards v. Goerg Boat & Motors, Inc.* (1979), Ind.App., 384 N.E.2d 1084, 1090. (*Trans. denied*) We must reverse the grant of a summary judgment motion if the record discloses an unresolved issue of material fact or an incorrect application of the laws to those facts. *Id.*

I. .

South Bend

Gaboury argues that the City of South Bend negligently placed the lighting of the street. He argues that the City had the duty to sufficiently light the end of the street so that he could have determined where the street terminated and the church driveway began. He stated the following in his affidavit in opposition to summary judgment:

"4. That because of the lighting and the fact that the cable was in no way highlighted, the plaintiff never saw the cable prior to the accident and was never aware that the [*sic*] had entered the property of the Ireland Road Grace Brethren, Inc."

\* \* \* \* \* \*

"6. That the plaintiff knew that a parking lot of a church was at the end of the road; however, he could not ascertain where the end of the road was located."

Gaboury testified in his deposition as follows:

"Q. And you were going to go into a parking lot and turn around, right?

"A. [Gaboury] Yes.

"Q. So if there was a parking lot there, it must have meant the road came to an end?

"A. Yes.

"Q. And could you see that parking lot before you got to it?

"A. I'm not sure. There's a driveway there. *I saw the driveway.*

"Q. *You headed for the driveway, didn't you?* .

"A. *Yes.*

"Q. I mean you intended to go into that parking lot to turn around?

"A. Uh-huh."

\* \* \* \* \* \*

"Q. Well, in other words, what I'm trying to ascertain is whether you, in your own mind, are confident with the fact that you did know how that particular intersection was set up and the fact that there was a dead end at Glenlake at that point.

"A. Not really, no. I wasn't.

"Q. You didn't know that?

"A. Well, I—I don't know. I guess I knew there was a driveway there. I didn't know there was a cable there is what I'm trying to say.

"Q. Well, I'm not asking you about the cable. I'm asking you about the layout of the street.

"A. Yeah. I knew that.

"Q. *You knew that Glenlake ended at that point?*

"A. *Uh-huh.*

"Q. *Yes?*

"A. *Yes.*

"Q. *And you knew the parking lot was there?*

"A. *Yes.*

"Q. The only thing you didn't know is whether a cable would be up?

"A. Yes." (Brackets added; emphasis added.)

The City of South Bend argues that Gaboury's deposition establishes that he saw that the street ended and that the driveway began; therefore he was aware he was on the church property. The granting of the motion of South Bend for summary judgment may not be based upon the facts set forth in Gaboury's deposition because Ga-

boury's affidavit appears to contradict his deposition. Only the trier of fact may choose which of Gaboury's statements to believe or disbelieve; neither the trial court nor the Court of Appeals may assess witness credibility on a motion for summary judgment. The facts in Gaboury's affidavit are considered to be true.[1] *Poxon, supra.* The trial court erred in granting South Bend's motion for summary judgment.

## II.

### The Church

The trial court granted the motion for summary judgment of the Church by stating in part:

"[T]he plaintiff [Gaboury] entered upon the defendant's [Church] premises for his own convenience and as a mere licensee at the time and place alleged and as such took the defendant's premises as he found them; this defendant had a right to exclude others from its property; the affirmative duty of the defendant to the plaintiff at the time and place alleged was to refrain from willfully or wantonly injuring him or acting in a manner to increase the licensee's peril..." (Brackets added.).

On appeal, Gaboury seems to argue that the trial court erred in its application of the law to the facts most favorable to Gaboury. He seems to argue that when the Church strung the cable to close off the driveway from the public it created a trap or pitfall; therefore, the Church did have a duty to warn him that the driveway was no longer open to the public. The law regarding the duty of an owner or occupant of land to licensees coming on the premises was set forth by this Court in *Fort Wayne National Bank v. Doctor* (1971), 149 Ind.

---

1. If Gaboury's affidavit was presented in bad faith or solely for the purpose of delay, South Bend can find relief under TR. 56(G). *Donat v. Indiana Business and Investment Trust* (1970), 147 Ind.App. 276, 259 N.E.2d 428, 429. TR. 56(G) states:

"Affidavits made in bad faith. Should it appear to the satisfaction of the court at any time that any of the affidavits presented pur-

suant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt."

App. 365, 272 N.E.2d 876. This case generally states that a licensee takes the land of the owner as he finds it. However, certain exceptions to this general rule do exist. Indiana has recognized the entrapment-trap-pitfall exception. *Id., Swanson v. Shroat* (1976), 169 Ind.App. 80, 345 N.E.2d 872, 877. This exception presumes that people usually avoid obvious dangers and need not be warned of an obvious danger; hidden defects or dangers, such as traps, pitfalls, or obstructions can not be avoided if the licensee does not know of them. Therefore, if the owner or occupant of the land (licensor) knows of a hazard and that the hazard is concealed, he has a duty to adequately warn the licensee of the trap.[2] *Swanson, supra; Strelecki v. Firemans Insurance Company of Newark* (1979), 88 Wis.2d 464, 276 N.W.2d 794, 797. The licensor must give reasonable notice or warning to licensees if he does any positive act creating a new concealed danger. *Frederick v. Reed* (1982), Ala.Civ.App., 410 So.2d 95, 97. The danger must be highly dangerous to life and limb; it inheres in the instrumentality or condition itself such that special precautions are required to be taken to prevent injury. *Bichsel v. Blumhost* (1968), Mo.App., 429 S.W.2d 301, 306.

■ There are no fixed rules for determining whether a condition of the premises is dangerous and is a trap; the facts and surrounding circumstances of each particular case will control. *Calhoun v. Royal Globe Ins. Co.* (1981), La.App., 398 So.2d 1166, 1168. This is a question of fact for the jury to determine. *Abney v. London Iron & Metal Co., Inc.* (1980), 245 Ga. 759, 267 S.E.2d 214, 216; *see Calhoun, supra; see Bichsel, supra.* The jury will also have

to determine if the hazard was concealed and if the owner or occupier of the land knew of the concealed danger. *Strelecki, supra,* 276 N.W.2d at 797–798.

■ The trial court erred when it granted the motion of the Church for summary judgment. Material issues of fact existed. The jury must decide whether a trap existed. It must determine if a dangerous condition was concealed and if the Church was aware of the dangerous condition. Gaboury's affidavit presented sufficient facts from which a jury could conclude that a trap existed.[3]

Judgment reversed.

NEAL, J., (by designation) concurs.

GARRARD, J., concurs with opinion.

GARRARD, Judge, concurring.

I concur in the result reached by the majority. Although the trial judge no doubt believed the plaintiff would be unable to recover, the grants of summary judgment were, at least, premature.

Regarding the city, and in addition to the credibility issue focused on by the majority, it should be noted that the complaint alleged the city street was negligently designed, constructed and maintained. There had been no narrowing of the issues thereby raised, and the materials before the court when summary judgment was granted did not conclusively establish the non-existence of all these allegations. Neither can we say at this juncture that however negligent the city may have been there could be no causation as a matter of law.

"If the property or a part of it has been devoted, even temporarily, to the public use, care must be taken not to render it unsafe, until proper notice at least has been given of the change; that nothing in the shape of a trap, or place likely to mislead, can be created to or through or along which the public, or even a few individuals, have been in the habit of resorting, or passing, or where there is a probability that they may go, and a probability of injury from the condition."

---

**2.** In *Bichsel v. Blumhost* (1968), Mo.App., 429 S.W.2d 301, 304 the court, quoting from 65 C.J.S. Negligence § 63(39), notes that a "trap" has been defined as (1) a danger which a person who does not know the premises could not avoid by reasonable care and skill, or (2) a hidden danger lurking on the premises which may be avoided if known. Now the word trap is used generally to mean any kind of a hidden, dangerous condition.

**3.** In *Knapp v. Doll* (1913), 180 Ind. 526, 103 N.E. 385 at 388 our Supreme Court stated:

The problem with the claim against the church is similar. There were not sufficient facts before the court to determine whether or not the cable could or might have constituted a trap. In fact, although a photograph showing the cable was apparently displayed to Gaboury during his deposition, it is not included in the deposition or any of the other materials before the court when it granted the judgment, nor is the cable otherwise described.

When the facts are developed it may well be that Gaboury will be precluded as a matter of law or a matter of fact from recovery. The significance of our decision today is merely to reinforce the conclusion that summary judgment is an ill-suited device for resolving the merits of tort claims sounding in negligence.